Filed 11/8/13  P. v. Slone CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H038179 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C1198487) |
| v. | |
| WALTER RAY SLONE, | |
| Defendant and Appellant. | |

A jury convicted defendant Walter Ray Slone of:  (1) forcible rape (Pen. Code, § 261, subd. (a)(2));[1] (2) forcible sexual penetration (§ 289, subd. (a)(1)(A)); (3) two counts of forcible oral copulation (§ 288a, subd. (c)(2)); and (4) criminal threats (§ 422). The jury also found true allegations that defendant kidnapped the victim in the commission of the offenses.  (§ 667.61, subds. (b) & (e).)  Following a bench trial, the court found true allegations that defendant had suffered two prior serious or violent felony convictions within the meaning of the "Three Strikes Law."  (§§ 667, subds. (b)-(i), 1170.12.)  The court sentenced defendant to an aggregate term of 325 years to life, consecutive to 50 years.

On appeal, defendant contends the trial court erred by excluding evidence of the victim's nonresponse to defendant's question whether she was a virgin—a question

---

[1] Subsequent undesignated statutory references are to the Penal Code.

defendant contends is related to the victim's credibility on the issue of consent.  We conclude the trial court did not abuse its discretion in excluding the evidence, and we affirm the judgment.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

A. *Facts*

Defendant, a 37-year-old Walmart clerk, met the victim, Michelle Doe, at a bus stop in January 2011.[2]  Doe, a 23-year-old foreign exchange student, gave her phone number to defendant.  For the next week, they exchanged text messages, became friends on Facebook, and talked on the phone.  They then agreed to go out together.

Defendant, driving his girlfriend's car, picked up Doe at her dorm on the evening of January 25, 2011.  They drove around to various destinations in the San José area, and he bought an alcoholic energy drink.  They stopped at defendant's uncle's residence, where defendant continued to drink alcohol.  Doe had "just a sip or two" of an alcoholic drink at his urging.  She let defendant massage her shoulders, and they kissed once.  Around 7:00 or 8:00 p.m., they left the uncle's residence and defendant, driving at high speed, took Doe to Oakland.  At that point, Doe began to become nervous and uncomfortable.

They stopped at several houses in the Oakland area.  Doe asked defendant to take her home, but he continued to drive around Oakland, visiting various friends.  Defendant bought more alcohol at a convenience store and told Doe to drink it.  She refused, and defendant drank it instead.  Doe wanted to escape, but she did not know where she was. Defendant again drove at high speed on the freeway, and they stopped at another house. Defendant pulled Doe's hair because she refused to drink the alcohol.  Around 11:00 p.m., Doe took over driving, and they got back on the freeway.  Doe wanted to

---

[2] The trial court ordered all parties to refer to the victim as Michelle Doe, not her real name.  The record does not disclose her full real name.  We will refer to her as Michelle Doe.

drive back to San José, but defendant forced her to exit the freeway and stop, whereupon he took over driving again. He again stopped at a house. He jumped over a fence and out of sight while Doe remained in the car. Doe was very nervous and wanted to drive away, but she did not know where they were, and she was afraid she would be accused of stealing the car. Defendant returned to the car, continued to drink alcohol, and drove the car back towards the freeway. Before they got onto the freeway, defendant opened the car door and vomited.

Around midnight, defendant pulled off the freeway and drove into a mall parking lot. It was dark, and there were no cars around. As Doe was sitting in the passenger seat, defendant grabbed her hair, slapped her on the face, and grabbed her breast. She struggled to get away and told him he was hurting her. He told her to stop yelling, and he got out of the car.

Doe then slid over to the driver's seat and put the car into reverse. The driver's door was not completely closed, and defendant hung onto it while the car was moving backward. Doe shifted the car into drive and drove the car forward, but the car struck something and she was forced to stop. She attempted to move back towards the passenger's side to get out of the car, but defendant got into the car and grabbed her arm. She struggled to get out of the car, and her jacket came off. When Doe reached back into the car to grab her handbag, defendant started driving away. He grabbed her arm, and she was dragged along the side of the car, causing her to get back into the car.[3]

As he was driving, defendant grabbed Doe's head, held it down, and told her not to scream. He threatened to kill her if she disobeyed him; she believed him. He continued to keep her head held down as he drove, and she could not see where they were going.

---

[3] On cross examination, Doe testified that he grabbed her hair, not her arm.

3

Defendant then drove into a second parking lot and parked in front of some bushes. It was dark, and there were no cars or people around. Defendant forced Doe out of the car by twisting her arm and pulled her onto the hood of the car. He removed her skirt, pantyhose, and underwear against her will. She told him she was menstruating, but he said he did not care. While holding onto her neck with one hand, he inserted his penis into her vagina against her will. When Doe complained that she was cold, they moved to the back seat of the car, and he continued to penetrate her against her will, using both his penis and his fingers. He kept one hand on her neck to prevent her from escaping. They moved back and forth between the hood of the car and the rear seat. During this time, defendant forced Doe to perform oral sex on him, and he did so to her as well. At some point, he struck her buttocks while penetrating her. Defendant did not ejaculate at any time during the assault.

After the assault, defendant collected some of Doe's clothes from outside the car, but he left some of them behind. With Doe in the back seat, he drove to a third parking lot. The car had been damaged when Doe attempted to escape in the first parking lot. Defendant told Doe he needed to repair the damage, and he got out of the car. While he was outside the car, she put the car into reverse, and the car ran over his foot. After the car had traveled some distance, she moved into the front seat and drove away.

Doe called 911 while she was driving away, but she was unable to communicate her location to the dispatcher. She drove to a 7-Eleven and called 911 again. Recordings of both calls were admitted at trial. Police and the 7-Eleven attendant testified that Doe was wearing an oversized white t-shirt and no shoes at the 7-Eleven. The car, parked in front of the store, had sustained damage to the front left fender, and the front left tire had come off the rim.

After police arrived, Doe was able to direct them to the parking lot where the assault occurred; they found her underwear, skirt, and pantyhose on the ground. Police then took her to the hospital, where she was examined for several hours.

4

Doe had approximately 30 bruises and scratches on various parts of her body, including a bruise on her left buttock, several bruises and scratches on her arms, scratches on both elbows, a scratch on her right knee, and a bruise on her left shoulder blade. She also had two abrasions to her right knee, an abrasion on her neck, and the large toenail on her right foot was pulled away from the skin. Doe stated that all these injuries occurred during the assault. Doe was also given a "SART" examination.[4] Her vagina was suffering from tenderness, abrasions, redness, and two lacerations. The injuries were consistent with penetration.

In a statement to police, defendant admitted he had sex with Doe on the night in question, but he claimed it was consensual. He speculated that Doe drove away angry because she discovered the car belonged to his girlfriend.

B. *Procedural Background*

Doe first testified at the preliminary hearing where defense counsel cross examined her about her silence in response to defendant's claim that he would not have sex with her if she were a virgin:

"[Question:] At one point that evening or early morning, Mr. Slone said to you that if you were a virgin, he wouldn't have sex with you; correct?

"[Answer:] Yes.

"[Question:] And you didn't say anything back to him; correct?

"[Answer:] Yes.

"[Question:] You didn't tell him 'Hey I'm a virgin'?

"[Answer:] Right."

---

[4] A SART (sexual assault response team) examination is an extensive, three- to six-hour examination designed to collect evidence from a victim of sexual assault. It involves questioning of the victim, DNA swabs, photographs of injuries, the use of fluorescent dye to locate lacerations or abrasions, and internal examination of the vagina.

Before trial, the prosecution moved to exclude evidence of Doe's nonresponse to defendant's question about her virginity. The prosecution relied on Evidence Code sections 782 (setting forth procedures for the admission of evidence of a complaining witness's sexual conduct) and 352 (court may exclude evidence when its probative value is substantially outweighed by its prejudicial effect on the trier of fact). The court granted the motion on both grounds.

The court first applied Evidence Code section 352, stating, "I don't believe that her silence is particularly probative of anything, and it does, in my view, invite the jury to speculate. So I do think that under a [section] 352 analysis, that the probative value is slight. I think there's a significant danger of prejudice. The jury could be focusing on thinking of whether or not she's a virgin or not a virgin." The court stated that the issue of whether Doe was a virgin was irrelevant, and the court concluded, "So I think under a [section] 352 analysis, it's—the prejudice outweighs the rather slight probative value and will be excludable under those grounds."

In applying Evidence Code section 782, the court concluded that the evidence reflected the victim's sexual history, requiring the defense to follow the rule's procedures for admission of the evidence. Since defense counsel had not followed the required procedures, the court ruled the evidence was excludable under that rule as well.

## II. DISCUSSION

Defendant contends the trial court erred by excluding evidence of Doe's nonresponse to his question whether she was a virgin. Defendant argues this evidence was probative of her consent because she could have discouraged him from having sex with her by telling him she was a virgin. Her failure to do so, defendant contends, suggests the sex was consensual. Furthermore, defendant argues that the jury was unlikely to be confused or prejudiced by the evidence, such that exclusion under Evidence Code section 352 constituted an abuse of discretion.

6

Defendant also contends the court erroneously applied Evidence Code section 782 because he did not seek to ask Doe about her sexual conduct. Defendant argues that he sought to ask Doe only about her silence in response to defendant's statement, not whether she was actually a virgin. Because Evidence Code section 782 only applies to "evidence of sexual conduct," defendant argues the rule did not require him to adhere to its procedures for admission of the evidence. Alternatively, defendant contends, if the rule did apply, then defense counsel provided ineffective assistance of counsel by failing to seek admission of the evidence through the required procedures.

Defendant argues that the trial court's errors constitute a violation of his federal constitutional rights under the Fifth Amendment right to due process and the Sixth Amendment right to present a defense.

A. *Standards of Review*

We review the trial court's rulings under Evidence Code sections 352 and 782 for abuse of discretion. (*People v. Riggs* (2008) 44 Cal.4th 248, 290; *People v. Bautista* (2008) 163 Cal.App.4th 762, 782.) We will not reverse the court's rulings unless defendant can show the court exercised its discretion in an arbitrary, capricious, or patently absurd manner, resulting in a manifest miscarriage of justice. (*People v. Jordan* (1986) 42 Cal.3d 308, 316.)

"To prevail on a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. [Citations.] Counsel's performance was deficient if the representation fell below an objective standard of reasonableness under prevailing professional norms. [Citation.] Prejudice exists where there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." (*People v. Benavides* (2005) 35 Cal.4th 69, 92-93, citing *Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 693-694.) " 'Finally, prejudice must be affirmatively proved; the record must demonstrate "a reasonable probability that, but for counsel's unprofessional

7

errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." ' " (*Id.* at p. 624.) "It is the defendant's burden on appeal [. . .] to show that he or she was denied effective assistance of counsel and is entitled to relief. [Citations.] '[T]he burden of proof that the defendant must meet in order to establish his [or her] entitlement to relief on an ineffective-assistance claim is preponderance of the evidence.' [Citation.]" (*In re Hill* (2011) 198 Cal.App.4th 1008, 1016.)

B. *Application of Evidence Code Section 352*

Evidence Code section 352 grants the trial court discretion to exclude evidence if its probative value is substantially outweighed by the probability that its admission will create a substantial danger of undue prejudice, inter alia. The trial court found the probative value of Doe's nonresponse to be "slight," while the prejudicial danger was "significant," therefore warranting exclusion. We conclude the trial court did not abuse its discretion.

Defendant contends Doe's nonresponse was probative of her consent because if she did not want to have sex with him, she simply could have told him she was a virgin. This logic is based on a questionable premise—that Doe actually believed he would decide not to have sex with her if she told him she was a virgin. The record contains no evidence to support this premise. By contrast, there are numerous reasons why a jury would not have inferred such a premise, inferring instead that Doe did *not* believe defendant's claim. She might have perceived his statement as a disingenuous gambit designed to elicit details about her sexual history. She may well have believed the opposite of defendant's claim—that if she told him she was a virgin, he would actually become *more* intent on having sex with her. Alternatively, she might have been so embarrassed by his question that she did not think quickly enough to respond to it. Or, perhaps she simply did not wish to discuss intimate details of her sexual history with

8

defendant.  For these reasons, we agree with the trial court that the probative value of the evidence was slight.

We also agree there was significant danger that introducing evidence—whether directly or indirectly—about the victim's sexual history would prejudice the jury against the victim.  Some jurors might have viewed her nonresponse as an implicit admission that she was not a virgin, leading to irrelevant and impermissible speculation about her role in the assault.  (See *People v. Fontana* (2010) 49 Cal.4th 351, 370 [evidence of prior sexual activity "suggests a receptivity to the activity or is proof that the victim got what she deserved—neither of which is a rational or permissible inference."].)  The trial court could reasonably find that the danger of such prejudice substantially outweighed the slight probative value of the evidence.  The court therefore did not abuse its discretion by excluding this evidence under Evidence Code section 352.

C.  *Application of Evidence Code Section 782*

Evidence Code section 782 sets forth procedures by which a defendant may challenge the credibility of a complaining witness by introducing evidence of the witness's sexual conduct.  "Before a defendant may introduce evidence 'of sexual conduct of the complaining witness . . . to attack the credibility of the complaining witness,' the defendant must obtain the approval of the trial court by filing a motion and affidavit with an offer of proof, after which the trial court may be required to hold a hearing out of the presence of the jury to 'allow the questioning of the complaining witness regarding the offer of proof made by the defendant.' "  (*People v. Tidwell* (2008) 163 Cal.App.4th 1447, 1454 (*Tidwell*).)  The trial court here excluded the evidence in part because defendant did not follow that procedure.  Defendant argues that Evidence Code section 782 did not apply to the evidence at issue because Doe's nonresponse to defendant's question about her virginity did not consist of evidence of her "sexual conduct," but merely the fact of her silence in response to defendant's question.

9

In *Tidwell*, a defendant sought to introduce allegedly false rape complaints previously made by the victim. (*Tidwell, supra,* 163 Cal.App.4th at p. 1454.) Although the victim's prior complaints pertained to her sexual conduct, the court of appeal held that the procedure required under Evidence Code section 782 did not apply because "the evidence that defendant sought to introduce was of complaints of rape, not of sexual conduct." (*Ibid.*) Relying on this analysis, defendant contends the court erred in excluding the evidence at issue here.

The Attorney General agrees that *Tidwell* is on point. Furthermore, the Attorney General concedes that Evidence Code section 782 did not apply to Doe's nonresponse. The Attorney General argues, however, that the evidence was nonetheless properly excluded under Evidence Code section 352, and that even if the trial court had erred, the error would be harmless under *People v. Watson* (1956) 46 Cal.2d 818. We agree.

As we conclude above, the trial court did not err in applying Evidence Code section 352, so defendant's claim of error under Evidence Code section 782 is effectively moot. However, as set forth below, even if the court had erred in applying both rules, the error would have been harmless, because defendant cannot show he was prejudiced.

D. *Harmless Error and Ineffective Assistance of Counsel*

Defendant contends the claimed errors violated his federal constitutional rights, requiring harmless error analysis under the standard set forth in *Chapman v. California* (1967) 386 U.S. 18. But "the admission of evidence, even if error under state law, violates due process only if it makes the trial *fundamentally unfair*. [Citations.] Absent fundamental unfairness, state law error in admitting evidence is subject to the traditional *Watson* test[.]" (*People v. Partida* (2005) 37 Cal.4th 428, 436.) (Italics in original.) Defendant has not shown a level of fundamental unfairness sufficient to demonstrate a violation of his federal due process rights. Similarly, with respect to the claimed violation of his right to present a defense, " '[a]pplication of the ordinary rules of evidence . . . does not impermissibly infringe on a defendant's right to present a defense.'

10

[Citations.]" (*People v. Fudge* (1994) 7 Cal.4th 1075, 1102-1103.) "[T]he exclusion of defense evidence on a minor or subsidiary point does not interfere with that constitutional right." (*People v. Cunningham* (2001) 25 Cal.4th 926, 999.) Considered in the context of all that occurred during the period defendant kidnapped and then raped the victim in this case, the point at issue is properly characterized as "minor or subsidiary." Therefore, assuming arguendo that there was error, we apply the harmless error standard under *People v. Watson, supra*, 46 Cal.2d at p. 836—whether it is reasonably probable a result more favorable to the appellant would have been reached in the absence of the error.

We conclude that a more favorable result was not reasonably probable. First, for the reasons set forth above, it is unlikely a jury would have been persuaded by defendant's argument that Doe's nonresponse constituted evidence of consent. Second, even if he could have cast greater doubt on her credibility, the jury was unlikely to ignore the abundant physical and objective evidence corroborating her testimony. Doe suffered numerous bruises, abrasions, and lacerations consistent with her testimony that defendant physically restrained her, dragged her alongside the car, struck her, and penetrated her against her will. The damage to the car supported Doe's testimony that she had attempted to escape amidst dire circumstances, causing her to collide with an unknown object, and subsequently, to drive a car without a tire on one rim. The jury heard the sound of her voice in the recordings of two 911 calls immediately following the assault. Witnesses described her vulnerable appearance at the 7-Eleven—wearing only an oversized t-shirt and no shoes. All of this physical and objective evidence supported her version of events. By contrast, in his statement to police, defendant could not explain how the victim could have suffered such extensive injuries during consensual sex. Accordingly, it is not reasonably probable that defendant would have enjoyed a more favorable outcome had the jury heard the excluded evidence.

By the same token, defendant's claim of ineffective assistance of counsel fails. First, it would have been futile for trial counsel to pursue admission of the evidence under

11

the procedures of Evidence Code section 782 since the evidence was inadmissible under Evidence Code section 352. "Counsel is not required to proffer futile objections." (*People v. Anderson* (2001) 25 Cal.4th 543, 587.) Defendant therefore cannot show any deficiency in trial counsel's conduct. Second, for the reasons set forth above, it is not reasonably probable he would have achieved a more favorable outcome even if he had put Doe's nonresponse before the jury. Defendant therefore cannot establish prejudice under *Strickland v. Washington, supra*, 466 U.S. 668.

Accordingly, we reject defendant's claims.

### III. DISPOSITION

The judgment is affirmed.

_____
Márquez, J.

WE CONCUR:

_____
Rushing, P. J.

_____
Grover, J.

12