[No. C054142. Third Dist. June 17, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
JUAN MICHAEL TIDWELL, Defendant and Appellant.

**COUNSEL**

Kat Kozik, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, and Julie A. Hokans, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**NICHOLSON, J.**—Convicted of rape and other crimes for his attack on a deaf woman, defendant was sentenced to state prison for 150 years to life

plus one year. On appeal, defendant makes assertions of evidentiary error, instructional error, ineffective assistance of trial counsel, and sentencing error. We conclude that judgment must be modified by striking some of the jury's true findings. As modified, we affirm. We also order the trial court to amend its minute order from sentencing and the abstract of judgment.

In the published portion of this opinion, we consider whether the procedure required by Evidence Code section 782 for admitting evidence of a victim's prior sexual conduct to attack the victim's credibility applies when the defense attempts to introduce evidence that the victim made prior false complaints of rape. We hold that Evidence Code section 782 does not apply in such circumstances.

## FACTS

The victim, R.C., a deaf woman with a learning disability, was 21 years old when the attack took place on September 10, 2005. She communicates by sign language, reading lips, writing notes, and text messaging. She lived in the vicinity of the College Greens light rail station in Sacramento and worked the night shift at Wal-Mart.

On September 10, 2005, R.C. left her apartment at 9:30 p.m. to go to work, walking toward the light rail station. As she was walking, defendant approached her and asked if he could use her cell phone. R.C. let him use the phone and, after he was finished, he gave it back. R.C. continued on her way toward the light rail station, and defendant accompanied her. They communicated by writing notes in a notebook.

Defendant asked R.C. to go out with him, but she said she could not. She told him that she already had a boyfriend and that she worked at Wal-Mart and was going to the light rail station on her way to work. Defendant offered to give R.C. a ride to work, but she declined. He also offered to pay her to spend some time with him, which she also declined.

R.C. walked across the street to the light rail station, thinking she was leaving defendant behind. As she went to purchase her ticket for the train, however, defendant walked up behind her and tapped her on the shoulder. He wrote her a note telling her he had a gun and directing her to come with him. He wrote that he wanted money, and she responded that she could not give him any. Defendant persisted in telling her to give him her money.

Defendant took R.C. to a dark area of a parking lot by the light rail station. R.C. saw that defendant had a knife in his hand. Only the blade was visible. She described it as a stabbing knife with a sharp point. Defendant

asked R.C. for $200. She had just $20, which she gave to him. Using written notes, defendant directed R.C. to pull up her shirt, "then I will leave." R.C. pulled up her shirt. He then had her pull down her pants and bend over towards the ground, which she did. She wrote to defendant asking if she could catch her train because she had shown defendant what he wanted to see. He replied that he had not seen it. He wrote to her to do it again, "then you can leave." Defendant put his jacket on the ground and told R.C. to lie down on it. He touched her vagina, putting his finger inside, and kissed her breasts. Defendant had R.C. get on her knees. He put on a condom and raped R.C., inserting his penis into her vagina several times.

When defendant was finished, he allowed R.C. to put her clothing back on. They walked over to the light rail station, but there were no more trains coming because it was midnight. Defendant was trying to act nicely. He asked R.C. if she wanted to go out for dinner. She responded that she had already eaten. Defendant offered to take her home or to work. She accepted a ride to work because she did not want him to know where she lived.

Defendant drove R.C. to the Wal-Mart where she worked. R.C. went into Wal-Mart, and defendant drove away. Upset and shaking, she immediately reported that she had been raped. She was taken to a hospital, where a rape examination was performed. Fissures were found in R.C.'s vagina, consistent with rape. Later, she met with police officers and turned over the notes that had been exchanged between her and defendant.

Defendant was arrested one month after the rape. He claimed he did not recall having sex with a deaf woman and did not recognize her picture. He denied owning a jacket.

The parties stipulated that defendant's DNA was found on the inside crotch area of R.C.'s underwear and on her breast. Defendant's fingerprints were on the notebook pages that R.C. gave to officers and his handwriting was on some of those pages.

At trial, the defense was that R.C. consented to the sex acts defendant committed on her. There was evidence that defendant was flirting with R.C. during their interactions before R.C. reached the light rail station. R.C. never told defendant she did not want to have sex, and during his acts, when he wrote the question, "Do you like it yes or no," she circled yes. She accepted a ride to work from defendant and did not get out of defendant's car immediately upon arriving in the Wal-Mart parking lot. Before getting out of the car, she agreed with defendant that she would call or text him.

## PROCEDURE

A jury convicted defendant of six counts as follows:

—count one, kidnapping to commit rape and robbery (Pen. Code, § 209, subd. (b)(1)), with a finding that defendant was personally armed with a knife (Pen. Code, § 12022, subd. (b)(1));

—count two, sexual battery (Pen. Code, § 243.4, subd. (a));

—count three, sexual penetration with a foreign object (Pen. Code, § 289, subd. (a)(1)), with findings that he used a deadly weapon (Pen. Code, § 667.61, subd. (e)(4)), he kidnapped the victim thereby increasing the risk (Pen. Code, § 667.61, subd. (d)(2)), and he kidnapped the victim (Pen. Code, § 667.61, subd. (e)(1));

—count four, rape (Pen. Code, § 261, subd. (a)(2)), with findings that he used a deadly weapon (Pen. Code, § 667.61, subd. (e)(4)), he kidnapped the victim thereby increasing the risk (Pen. Code, § 667.61, subd. (d)(2)), and he kidnapped the victim (Pen. Code, § 667.61, subd. (e)(1));

—count five, rape (Pen. Code, § 261, subd. (a)(2)), with findings that he used a deadly weapon (Pen. Code, § 667.61, subd. (e)(4)), he kidnapped the victim thereby increasing the risk (Pen. Code, § 667.61, subd. (d)(2)), and he kidnapped the victim (Pen. Code, § 667.61, subd. (e)(1)); and

—count nine, robbery (Pen. Code, § 211), with a finding that defendant was personally armed with a knife (Pen. Code, § 12022, subd. (b)(1)).

The jury acquitted defendant of three counts of rape—counts six, seven, and eight.

The trial court found true that defendant had five prior convictions for serious felonies, all in 1998. The prior convictions were for two counts of robbery, two counts of kidnapping, and one count of assault with intent to commit rape.

The trial court sentenced defendant under the "Three Strikes" law as follows:

—25 years to life, tripled to 75 years to life, for count three;

—three consecutive terms of 25 years to life for counts four, five, and nine;

—a consecutive term of one year for the use allegation in count nine;

—a concurrent term of 25 years to life for count two.

The trial court stayed the sentence for count one and its use allegation. Thus, the total state prison term imposed was an indeterminate term of 150 years to life and a determinate term of one year.

## DISCUSSION

### I

### *Prior Rape Allegations*

 Defendant contends that the trial court abused its discretion by excluding evidence that R.C. made prior rape complaints that may have been false. He asserts that the court erred by not allowing him to question R.C. pursuant to Evidence Code section 782 (hereafter, section 782). We hold that section 782 does not apply to prior rape complaints. And we conclude that the trial court did not abuse its discretion in excluding the evidence.

#### A. *Background*

Before trial, defendant filed a "Motion in Limine to Admit Evidence Pursuant to Evidence Code § 782." In connection with the motion, he made an offer of proof, detailed below, that R.C. had made prior false complaints of rape and sought a ruling from the court allowing him to introduce evidence of the prior complaints during the trial.

The offer of proof related to two incidents in which R.C. stated she had been raped: one on February 3, 2000, and the other on September 20, 2000.

#### 1. *February 3, 2000, Rape Complaint*

According to defendant's offer of proof, R.C. told a police officer that she was blindfolded and kidnapped from in front of her apartment complex after school. The person, whom she did not know, tied her hands behind her back and transported her somewhere by car. He stopped the car, took her out of the car, and raped her. She told the officer that she was not sexually active. The person took her back to her apartment complex and left her there. She did not know the location of the rape. Although she did not tell her mother or brother what happened, she told two friends at school the next day, after which a police officer took her statement.

During a sexual assault exam on February 4, R.C. told the medical personnel that no force was used but that her vagina hurt. Although there was some vaginal discharge, there were no acute injuries. There was evidence of healed hymenal trauma, indicating prior penetration.

A few weeks after the February 3 incident, a police officer took a statement from Sonia Mejia, a friend of R.C.'s. She stated that she talked to R.C. on the day after the incident. R.C. told her that R.C. had gone to her boyfriend's house. Her boyfriend was not there, but one of his friends, a 20-year-old, "touched" her. Mejia did not believe it was a stranger who attacked R.C.

### 2. *September 20, 2000, Rape Complaint*

On September 20, 2000, R.C. was a student at the California School for the Deaf in Fremont. She went to a grocery store with other students and, while there, saw Mark Crawford, whom she had met at school. She went for a drive with Crawford and went with him into a public restroom at a park where he forced her to have sex with him.

A counselor questioned R.C. about leaving the store with Crawford. R.C. admitted she had gone for a drive with Crawford but denied that anything occurred between them. Months later, however, after the counselor received information that Crawford may have raped R.C., she asked R.C. about it. At that point, R.C. told the counselor that Crawford had raped her in the restroom.

R.C. told a police officer that Crawford pulled her from the store, took her forcibly by car, and raped her in the public restroom. She stated that she reported the rape to two counselors at the school and obtained an abortion pill from the nurse on campus. A social worker reported to an officer that she checked the records of the school's health center and determined that R.C. had come in because of vomiting that day but not because of a rape complaint.

Several months later, R.C. told an officer that she voluntarily walked to Crawford's car. When she hesitated, Crawford demanded that she get in. Although she was scared, she got in the car. She told the officer that Crawford later pulled her out of the car, pulled and pushed her towards the restroom at the park, and assaulted her.

Crawford was arrested, but he claimed that the encounter with R.C. was consensual. He was not prosecuted.

### 3. *Exclusion of Evidence*

After reviewing defendant's motion, the trial court stated its understanding that, because R.C. never recanted her prior rape complaints, the only way defendant could establish the falsity of the complaints would be to have the men she accused testify. Defense counsel agreed but noted that there were

problems with that approach because R.C. was unable to identify an attacker for the February 2000 incident and Crawford, the person involved in the September 2000 incident, might be difficult to find. The trial court agreed to schedule a hearing out of the presence of the jury for the defense to present evidence in an attempt to establish the falsity of R.C.'s prior rape complaints.

At the hearing out of the presence of the jury, the defense, which had found Crawford, secured his presence in court to testify. But Crawford asserted his right to remain silent, making him unavailable as a witness. After the court and counsel discussed other alternatives for introducing evidence of R.C.'s prior rape complaints, including through counselors, police officers, and others, defendant moved for permission to introduce that type of evidence. The trial court ruled the evidence inadmissible pursuant to Evidence Code section 352 (hereafter, section 352). In making this ruling, the court commented on (1) the weakness of the evidence supporting a conclusion that the rape complaints were false and (2) the prosecution's intention to call a witness who would testify that Crawford raped her around the same time that the incident took place with R.C.

### B. Applicability of Section 782

Section 782 provides a procedure by which a defendant may attempt to attack the credibility of a complaining witness by introducing evidence of the complaining witness's sexual conduct. Although defendant attempted to utilize the procedure provided in section 782 to introduce evidence of R.C.'s allegedly false complaints of rape, the procedure was inapplicable because the evidence that defendant sought to introduce was of complaints of rape, not of sexual conduct.

Before a defendant may introduce evidence "of sexual conduct of the complaining witness . . . to attack the credibility of the complaining witness," the defendant must obtain the approval of the trial court by filing a motion and affidavit with an offer of proof, after which the trial court may be required to hold a hearing out of the presence of the jury to "allow the questioning of the complaining witness regarding the offer of proof made by the defendant." (§ 782, subd. (a).)[1]

---

[1] In relevant part, section 782, subdivision (a) states:

"In any of the circumstances described in subdivision (c), if evidence of sexual conduct of the complaining witness is offered to attack the credibility of the complaining witness under Section 780, the following procedure shall be followed:

"(1) A written motion shall be made by the defendant to the court and prosecutor stating that the defense has an offer of proof of the relevancy of evidence of the sexual conduct of the

Citing section 782, defendant filed his motion to introduce evidence of R.C.'s prior complaints of rape. He claims his offer of proof was sufficient and thus required the trial court to allow him to question R.C. in a hearing out of the presence of the jury. Had he been able to do so, he speculates, she may have recanted her prior complaints of rape, which defendant could have used to impeach her in testimony in the presence of the jury.

As support for his claim that section 782 required the trial court to allow defendant to question R.C. in the hearing out of the presence of the jury, defendant cites authority for interpreting broadly the term "sexual conduct" in section 782. For example, in *People v. Casas* (1986) 181 Cal.App.3d 889 [226 Cal.Rptr. 285] (*Casas*), the court applied section 782 to a complaining witness's prior solicitation of an act of prostitution. The court reasoned that the prior act "reflect[ed] the speaker's willingness to engage in sexual intercourse" and therefore fell within a broad interpretation of the statute. (*Casas, supra,* at p. 895.) In *People v. Daggett* (1990) 225 Cal.App.3d 751 [275 Cal.Rptr. 287], the court held that section 782 was applicable when the defense attempted to introduce evidence that a young victim of a sexual offense had been molested on an earlier occasion. The earlier molest was relevant to the child's ability to describe sexual acts such as those for which the current defendant was being prosecuted. (*Daggett, supra,* at p. 757.)

Generally, evidence of prior sexual conduct goes to the question of the victim's credibility concerning lack of consent, as discussed in *People v. Rioz* (1984) 161 Cal.App.3d 905, 916 [207 Cal.Rptr. 903]: "There is necessarily a certain amount of overlap between the issues of the victim's consent in a rape or other sex offense case and the victim's credibility. Presumably, any complaining witness in a rape case will deny consent to the sexual acts complained of; to avoid the harassment which had traditionally plagued complaining witnesses in cases of this type, the Legislature excluded evidence of prior sexual activity by the complaining witness with persons other than the defendant in order to prove consent. Thus, it seems clear under Evidence Code section 1103, subdivision (b)(1), that a defendant in a rape

complaining witness proposed to be presented and its relevancy in attacking the credibility of the complaining witness.

"(2) The written motion shall be accompanied by an affidavit in which the offer of proof shall be stated. The affidavit shall be filed under seal and only unsealed by the court to determine if the offer of proof is sufficient to order a hearing pursuant to paragraph (3). After that determination, the affidavit shall be resealed by the court.

"(3) If the court finds that the offer of proof is sufficient, the court shall order a hearing out of the presence of the jury, if any, and at the hearing allow the questioning of the complaining witness regarding the offer of proof made by the defendant.

"(4) At the conclusion of the hearing, if the court finds that evidence proposed to be offered by the defendant regarding the sexual conduct of the complaining witness is relevant pursuant to Section 780, and is not inadmissible pursuant to Section 352, the court may make an order stating what evidence may be introduced by the defendant, and the nature of the questions to be permitted. The defendant may then offer evidence pursuant to the order of the court."

case cannot, based solely upon the victim's testimony and her presumed denial of consent, introduce evidence that she engaged in sexual activity with 1 other man, 10 other men, or 100 other men, nor that she engaged in such activity freely or for monetary compensation. This rule properly prevents the victim of sexual assault from being herself placed on trial. However, once the defendant, in accordance with the procedural requirements of Evidence Code section 782, makes a sworn offer of proof concerning the relevance of the sexual conduct of the complaining witness to attack her credibility, even though it is the underlying issue of consent which is being challenged, then the absolute protection afforded by Evidence Code section 1103, subdivision (b)(1), gives way to the detailed procedural safeguards inherent in Evidence Code section 782." (Italics omitted.)

Even though the term "sexual conduct" in section 782 is interpreted broadly, it does not encompass the conduct attributed to the complaining witness here. Defendant sought to impeach R.C. with allegedly false statements, not sexual conduct or, as in *Casas*, a willingness to engage in sexual conduct. In *People v. Franklin* (1994) 25 Cal.App.4th 328 [30 Cal.Rptr.2d 376], the court made the distinction between the attempt to impeach with prior sexual conduct and to impeach with prior false complaints of rape or molest. It stated: "Even though the content of the statement [the false complaint] has to do with sexual conduct, the sexual conduct is not the fact from which the jury is asked to draw an inference about the witness's credibility. The jury is asked to draw an inference about the witness's credibility from the fact that she stated as true something that was false. The fact that a witness stated something that is not true as true is relevant on the witness's credibility whether she fabricated the incident or fantasized it." (*Id.* at p. 335.)

Section 782 was inapplicable because it was R.C.'s allegedly false complaints that the defense sought to use as impeachment evidence, not her prior sexual conduct or willingness to engage in sexual activity. Under these circumstances, the language of section 782 does not apply and the procedure mandated by section 782 is unnecessary. Accordingly, defendant fails in his assertion that, pursuant to section 782, the trial court was required to allow him to question R.C. in a hearing out of the presence of the jury to determine whether she would recant her prior complaints of rape.

### C. *Exclusion Under Section 352*

Although the trial court was not required to hold a hearing pursuant to section 782, we must still consider defendant's assertion that the trial court erred in excluding, pursuant to section 352, evidence of R.C.'s allegedly false complaints of rape. We conclude that, even though the evidence was relevant and admissible pursuant to Evidence Code section 1103, the trial court did

not abuse its discretion by excluding the evidence because the evidence was weak on the issue of R.C.'s credibility and would require an undue consumption of time.

The trial court explicitly exercised its discretion to exclude the proffered evidence concerning R.C.'s prior rape complaints. Speaking of defendant's accusations that R.C.'s prior rape complaints were false complaints, the court stated: "I am exercising my discretion under Evidence Code Section 352. At this point I believe these accusations are substantially more prejudicial than they are probative."

"[A] prior false accusation of sexual molestation is . . . relevant on the issue of the molest victim's credibility." (*People v. Franklin, supra*, 25 Cal.App.4th at p. 335.) The same is true of a prior false rape complaint. (*People v. Adams* (1988) 198 Cal.App.3d 10, 18 [243 Cal.Rptr. 580].) However, R.C.'s prior rape complaints would have no bearing on her credibility unless it was also established that those prior complaints were false. (See *People v. Burrell-Hart* (1987) 192 Cal.App.3d 593, 599–600 [237 Cal.Rptr. 654].)

■ Section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." "[A] trial court's exercise of discretion under Evidence Code section 352 will not be reversed on appeal absent a clear showing of abuse. [Citations.] It is also established that ' "Evidence Code section 352 must bow to the due process right of a defendant to a fair trial and his right to present all relevant evidence of significant probative value to his defense." ' [Citations.] This does not mean that an unlimited inquiry may be made into collateral matters; the proffered evidence must have more than 'slight-relevancy' to the issues presented. [Citation.] . . . [Citation.] The proffered evidence must be of some competent, substantial and significant value. [Citations.]" (*People v. Northrop* (1982) 132 Cal.App.3d 1027, 1042 [182 Cal.Rptr. 197], italics omitted, disapproved on other grounds in *People v. Smith* (1984) 35 Cal.3d 798, 807–808 [201 Cal.Rptr. 311, 678 P.2d 886].) A trial court's exercise of discretion under section 352 "will not be disturbed except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice. [Citation.]" (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9–10 [82 Cal.Rptr.2d 413, 971 P.2d 618].)

■ Defendant's problem in showing that the trial court abused its discretion in excluding the evidence concerning the prior rape complaints is

that it is not readily apparent that those prior complaints were false. While a prior false complaint establishes an instance of dishonesty on the very issue hotly disputed in this case, that is, whether R.C. consented to the sexual acts, a prior complaint not proven to be false has no such bearing.

The Supreme Court upheld a trial court's exercise of discretion to exclude evidence pursuant to section 352 under facts similar to those presented here. (*People v. Bittaker* (1989) 48 Cal.3d 1046, 1097 [259 Cal.Rptr. 630, 774 P.2d 659].) The court stated: "[A witness] testified that when she rejected defendant's advances, he pulled a gun and said, 'you wouldn't argue if I pulled the trigger.' Defense counsel sought to impeach her by evidence that she had made false charges of sexual molestation against two other men. The trial court upheld an objection under Evidence Code section 352. Its ruling is not an abuse of discretion. The value of the evidence as impeachment depends upon proof that the prior charges were false. This would in effect force the parties to present evidence concerning two long-past sexual incidents which never reached the point of formal charges. Such a proceeding would consume considerable time, and divert the attention of the jury from the case at hand." (*People v. Bittaker, supra*, at p. 1097.)

The same is true here. Although there was some evidence that R.C. made inconsistent statements, there was no conclusive evidence that her prior rape complaints were false. The defense was unable to obtain evidence from the men that R.C. accused, and inferences could be drawn either way from the circumstances of the prior incidents and R.C.'s statements concerning the incidents. In addition to the weaknesses in the evidence concerning falsity of the rape complaints, admitting the evidence would have resulted in an undue consumption of time as the defense attempted to bolster its view and the prosecution introduced evidence that Crawford had raped another female student. We therefore cannot say that the trial court abused its discretion in excluding the evidence based on the weak nature of the evidence of falsity of the complaints and the confusion of the jury and consumption of time it would have engendered for the parties to embark on the task of litigating the truthfulness of R.C.'s prior complaints.

II–IX*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The jury's true findings in counts three, four, and five of an enhancement pursuant to Penal Code section 667.61, subdivision (e)(1) are stricken. As

---

*See footnote, *ante*, page 1447.

modified, the judgment is affirmed. The trial court is directed to amend the minute order of sentencing to reflect the proper code section for imposing personal use enhancements, as discussed in an unpublished portion of the discussion. The trial court is also directed to prepare an amended abstract of judgment reflecting (1) the striking of the Penal Code section 667.61, subdivision (e)(1) enhancements, as stated above, and (2) the proper code section for imposing the personal use enhancements, as discussed in an unpublished portion of the discussion, and to send the amended abstract to the Department of Corrections and Rehabilitation.

Sims, Acting P. J., and Cantil-Sakauye, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 1, 2008, S165499. Kennard, J., did not participate therein.