Filed 8/21/14  P. v. Pantaleon CA5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JEFFREY PANTALEON,<br><br>    Defendant and Appellant. | F064211<br><br>(Super. Ct. No. F08902350)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Arlan L. Harrell, Judge.

Nuttall & Coleman, Roger T. Nuttall and Glenn M. Kottcamp, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and Daniel B. Bernstein, for Plaintiff and Respondent.

-ooOoo-

Jeffrey Pantaleon was charged with multiple felonies for sexually abusing his niece, the victim in this case, when she was between the ages of 7 and 11 years old.  A Fresno County jury convicted him on all counts: sexual assault on a child under the age

of 14 years by means of forcible oral copulation (Pen. Code, § 269, subd. (a)(4); Count 1) and the commission of lewd acts upon a child under the age of 14 years (Pen. Code, § 288, subd. (a); Counts 2 through 19).[1] The trial court sentenced Pantaleon to an aggregate term of 57 years to life in prison.

Pantaleon now contends (1) the trial court violated his constitutional due process rights by excluding evidence that the victim had previously accused another relative of rape; (2) that certain testimony by a prosecution witness should have been excluded pursuant to California's Invasion of Privacy Act (§ 630 et seq.); (3) Counts 2 through 19 were time barred by the statute of limitations; and (4) the accusatory pleadings filed by the District Attorney's office were unconstitutionally vague and "generic." Most of appellant's arguments are presented for the first time on appeal, thus raising the issue of forfeiture. Even on the merits, however, there are no grounds for reversal. We affirm the judgment.

## STATEMENT OF FACTS

Because appellant does not challenge the sufficiency of the evidence supporting his convictions, we summarize the relevant facts without delving into unnecessary details about the incest. Additional background information pertaining to specific assertions of error is provided in the Discussion section of the opinion.

Pantaleon is the victim's maternal uncle. From approximately 1997 to 2001, when he was between the ages of 19 and 23 and the victim was 7 to 11 years old, Pantaleon subjected his niece to unlawful sexual behavior which included digital penetration, oral copulation, and intercourse. The abuse stopped sometime around 2002, notwithstanding one or two incidents during the victim's early teenage years when she rebuffed her uncle's advances.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

In approximately 2006, the victim confided in a boyfriend about the abuse. The boyfriend later told the victim's mother (i.e., appellant's sister) what Pantaleon had done to her daughter. The victim's family addressed the issue with Pantaleon, but chose not to report his crimes to the proper authorities.

In January 2008, the victim disclosed the abuse to health care providers, which led to a formal investigation by police. In April 2008, the Fresno County Sheriff's Department arranged for the victim to make a pretextual phone call to Pantaleon for the purpose of eliciting incriminating statements from him. During the call, the victim asked, "Why did you rape me, why me [?] I was a little girl." Pantaleon replied, "… I don't know why I did it[.] I guess I was stupid about it." The victim also asked Pantaleon if he remembered when the abuse started, stating her belief that it began when she was seven years old. He answered, "I don't remember. Maybe it's something that…." Towards the end of their conversation, Pantaleon begged his niece for forgiveness.

A few days after the pretext call, the sheriff's department contacted Pantaleon and asked if he would participate in an interview with detectives at their headquarters. Pantaleon agreed, drove himself to the meeting, and spent more than two hours answering questions about his niece. He admitted to engaging in sexual intercourse with the victim "between six and ten times," having her orally copulate him approximately six to ten times, and digitally penetrating her on at least five occasions. Pantaleon stated that he was between the ages of 21 and 23 when the intercourse occurred, thereby corroborating the victim's timeline for the abuse. Based on their age difference of approximately 12 years and 7 months, Pantaleon's niece would have been between the ages of 8 and 11 years old when he had sex with her.

Audio recordings of the pretext call and of Pantaleon's pre-arrest interview were played for the jury at trial. The prosecution's case-in-chief also included testimony from the complaining witness, the former boyfriend, the victim's mother, and two law enforcement officers. Pantaleon testified in his own defense and called several family

3.

members as witnesses to help verify his chronological history of the events. Whereas the victim alleged the abuse occurred at multiple locations over a period of several years, Pantaleon insisted there were only a handful of incidents, all of which took place at his mother's home in Sanger over the span of 12 months.

Pantaleon testified that he engaged in sexual misconduct with his niece on five separate occasions between 2004 and 2005. He admitted to masturbating in front of the victim, digitally penetrating her one time, receiving oral copulation from her one time, and two instances of sexual intercourse. The victim was portrayed as a willing participant in these encounters. Pantaleon repeatedly stated that his niece was "over 14" when the incidents occurred, but did not specify his own age during the relevant time period.

Addressing the discrepancies between his trial testimony and pre-arrest statements concerning the number of times he abused the victim, Pantaleon said, "[The police] were pushing for big numbers, so I was going with their numbers." As for admitting that he was between 21 and 23 years old at the time of the incidents, Pantaleon testified that he believed the statement to be true when he made it, but did not realize he was indirectly corroborating the victim's claim that she was under 14 years of age. Regarding his failure to refute specific allegations about the victim's age during the police interview, Pantaleon explained, "I wasn't sure on the time frame, but I knew it wasn't that – that young. But I just didn't want to argue with them."

## DISCUSSION

**The Victim's Prior Rape Allegation**

Background

On August 19, 2011, pursuant to a motion in limine filed by Pantaleon's defense counsel, the trial court conducted an in camera review of the victim's medical records from January 2008. The records pertained to the victim's hospitalization at the age of 17 for alcohol intoxication and depression, which in turn led to revelations about her

4.

experiences of childhood sexual abuse, and the subsequent investigation by police. Defense counsel requested disclosure of any "relevant impeachment evidence of the victim" contained in the records.

Following the in camera review, the trial court disclosed excerpts of medical records from two health care facilities. The records from the first facility contained two relevant entries: "Molested for several years … Molested when she was 7 years old to 12 years old by uncle." These entries were authored by a person named Guy Gadd. The second series of excerpts were taken from a document authored by Sandra Isaak at a different hospital: "Abused by another family member over a period of seven years. [¶] P.D. [police department] called re: 5150 consult. P.D. was told the same abuse story by the patient, only this time she stated that a different family member had abused her." The trial court observed that Ms. Isaak's statements were "very, very ambiguous," but concluded the information was discoverable "because it would go to the issue of possible impeachment [and/or] possible consistent or inconsistent statement[s]" by the victim. A brief trial continuance was granted to allow time for the parties to investigate the matter further.

On August 25, 2011, the prosecution filed a supplemental trial brief summarizing its recent findings concerning the complaining witness and the defendant's brother, Bernardo Pantaleon (Bernardo). The victim maintained that she was raped by her uncle Bernardo when she was 10 or 11 years old. Consequently, "[t]here was a short period of time where [the victim] was being abused by both Jeffrey and Bernardo Pantaleon."

Bernardo is older than the victim by approximately 2 years and 11 months, and would have been a juvenile at the time of the alleged incident(s). According to the prosecution, the victim did not want to pursue legal action against Bernardo due to the family turmoil that had already resulted from the prosecution of Jeffrey Pantaleon. However, she did send a detailed text message to Bernardo memorializing her allegations, and Bernardo reportedly apologized for sexually assaulting her. The

prosecution submitted that there was "no record of [the victim] ever recanting her allegation against Bernardo, nor is there any record of her claiming the rape did not occur. If anything, there is positive proof that Bernardo made multiple admissions concerning this rape, further solidifying [the victim's] claim." Accordingly, the prosecution moved to exclude any evidence of the victim's allegations against Bernardo pursuant to the holding in *People v. Tidwell* (2008) 163 Cal.App.4th 1447 (*Tidwell*) regarding the admissibility of false accusation evidence in cases involving sex crimes.

Further proceedings were held following the submission of the prosecution's supplemental brief. Defense counsel argued that evidence of the victim's accusations against Bernardo was essential for impeachment purposes because it showed "that whenever she is in trouble for something else, she [blames] family members for raping her." Pantaleon's trial attorney presumed the victim's allegations against Bernardo were false, though he conceded that proving such falsity would be difficult and time consuming. The defense summarized its position as follows:

> "[I]n *Tidwell* the Court ordered a[n] evidentiary hearing for [the defendant] to put on witnesses to prove the rapes were false, although the witness failed to show up. In this case, Your Honor, I can put Bernardo on. I'm sure he will deny all the charges. But it is like putting on another trial. I talked to him about that, I called him and he said, 'No, that never happened. I never had these conversations with her. I never abused her.'

> "So it really seems like when she gets in trouble – because this report about Bernardo, this report to the police department happened after she was arrested for intoxication. The report on Jeffrey happens after her parents take her to the hospital because she is threatening to commit suicide. And she is intoxicated again. So every time she gets in trouble, she has a tendency to blame somebody. I would like to be able to go into that."

Defense counsel also presumed the victim had accused appellant and Bernardo of being responsible for the same incidents of abuse (contrary to the representations set forth in the prosecution's brief), but the court found this argument to be speculative since appellant's offer of proof was limited to the excerpts from her medical records.

Pantaleon's lawyer revealed that he had contacted Sandra Isaak and learned she had no independent recollection of the events ("She does not remember a thing about this"). The same was true of the police officer who allegedly informed Ms. Isaak of the victim's claim that a different family member had abused her. Pantaleon's attorney ultimately agreed that it would be impossible to show the victim had accused both Bernardo and Jeffrey Pantaleon of the same criminal acts, i.e., identical episodes of abuse occurring on the same dates and in the same locations.

After considering the arguments presented by both sides, the trial court ruled on the prosecution's motion:

> "Evidence Code section 352 allows the Court to exercise discretion to exclude evidence if its probative value is substantially outweighed by the probability that its admission will either – will necessitate undue consumption of time or create a substantial danger of undue prejudice, of confusing the issues or misleading the jury. Based upon what the Court has heard up to this point, the Court is satisfied that this would lead to an undue consumption of time, and probably more importantly, would lead to a confusion of the issues. The issue is whether Mr. Pantaleon committed the crimes that the People have accused him of.

> "As is pointed out in the *Tidwell* case – and I don't see a distinction between the two situations. In *Tidwell* we have an individual who was accused of having committed sex crimes. We have an alleged victim who alleged that she had been the victim of other sex crimes by other individuals. And the defense wanted to use that – those other instances of alleged sex crimes to impeach the victim. So I think it is very similar to what we have here[,] unless it is shown that the alleged conduct that is attributed to Bernardo is the exact same conduct that is attributed to Mr. Pantaleon. In which case, we have basically an alleged victim who is accusing two people of the exact same conduct. To me, that would … be very probative as to the truth of the accusations against Mr. Pantaleon. So unless that is established by way of investigation, I do not believe that it is appropriate to go into the other issue of whether [Bernardo] committed any kind of acts against the alleged victim in this case. That would confuse the issues. The jurors would be faced with two individuals who allegedly engaged in allegedly inappropriate contact with the victim, when only one of those individuals is on trial. So the Court is exercising its discretion under Evidence Code section 352 to prohibit counsel from going into any alleged inappropriate contact between Bernardo and the alleged victim in this case."

7.

Appellant contends that the trial court's ruling impeded his ability to present a defense, thereby violating his due process rights as guaranteed by the United States Constitution. His constitutional claims were not raised at the time of trial. Furthermore, Pantaleon's arguments on appeal are antithetical to the position he adopted below. He now claims the victim *was* raped by his brother Bernardo, and that his trial attorney should have been allowed to introduce evidence of Bernardo's alleged misconduct to show the victim was confused as to which of her uncles abused her at different points in time. Pantaleon's change of position is explicitly set forth in his Reply brief, wherein he states: "Appellant does not claim that the victim has falsely accused her uncle/other family members of raping her when she was ten or eleven; to the contrary. It is the fact that these other incidents took place that goes to the heart of the relevance of the evidence in question, and which represents the basis for appellant's claim that the trial court erred."

Analysis

A trial court's ruling on the admissibility of evidence is reviewed for abuse of discretion. (*People v. Elliott* (2012) 53 Cal.4th 535, 577, 581 (*Elliott*).) As noted above, Evidence Code section 352 allows judges to balance the probative value of relevant evidence against the potential for unwarranted delay, juror confusion, and undue prejudice. To establish reversible error in relation to the balancing of these factors, the appellant must, at a minimum, show that the excluded evidence had substantial and significant probative value to his defense. (*Tidwell*, *supra*, 163 Cal.App.4th at p. 1457; *People v. Reeder* (1978) 82 Cal.App.3d 543, 553.) In any event, a trial court's exercise of discretion will not be disturbed unless it "exceeds the bounds of reason, all of the circumstances being considered." (*People v. Stewart* (1985) 171 Cal.App.3d 59, 65.)

Looking first at the arguments presented by Pantaleon at trial, we find no error in the lower court's ruling. Defense counsel characterized the victim's accusations against Bernardo as impeachment evidence, and candidly outlined his strategy to discredit her by suggesting she had a history of falsely accusing family members of sexual misconduct.

8.

When evidence is offered for purposes of impeachment, the trial court has broad discretion to exclude it under Evidence Code section 352.  (*People v. Hamilton* (2009) 45 Cal.4th 863, 946.)

In a prosecution for unlawful sexual behavior, the impeachment value of a complaining witness's prior rape allegation depends upon the veracity of her claim.  "Prior rape complaints do not reflect on credibility unless proven to be false."  (*People v. Miranda* (2011) 199 Cal.App.4th 1403, 1424.)  "The trial court has discretion under Evidence Code section 352 to exclude evidence of prior reports of sexual assault if proof of the falsity of the prior complaint 'would consume considerable time, and divert the attention of the jury from the case at hand.'"  (*Ibid*., quoting *People v. Bittaker* (1989) 48 Cal.3d 1046, 1097, fn. omitted.)

The circumstances of this case are analogous to those in *Tidwell*, *supra*.  Facing charges of kidnapping and rape, the defendant in *Tidwell* attempted to introduce evidence of prior rape allegations by the complaining witness which may have been false.  (*Tidwell*, *supra*, 163 Cal.App.4th at p. 1454.)  The prior complaints were never adjudicated, but there was evidence the victim had made inconsistent statements in her reporting of an incident involving a man named Crawford.  (*Id*. at p. 1453.)  Mr. Crawford was subpoenaed to appear at the defendant's trial, but asserted his right to remain silent, making him unavailable as a witness.  (*Id*. at p. 1454.)

The trial court in *Tidwell* excluded evidence of the victim's prior rape allegations pursuant to Evidence Code section 352, citing "the weakness of the evidence supporting a conclusion that the rape complaints were false" and the prosecution's stated ability to introduce evidence tending to show the allegations against Mr. Crawford were true.  (*Tidwell*, *supra*, 163 Cal.App.4th at p. 1452.)  On review, the appellate court held that the lack of conclusive information regarding the prior complaints justified the trial court's ruling, as did the likelihood that admitting the evidence would have resulted in juror confusion and unwarranted delay.  "We therefore cannot say that the trial court abused its

9.

discretion in excluding the evidence based on the weak nature of the evidence of falsity of the complaints and the confusion of the jury and consumption of time it would have engendered for the parties to embark on the task of litigating the truthfulness of [the victim's] prior complaints." (*Id.* at p. 1458.)

As in *Tidwell*, defense counsel below sought to impeach the complaining witness on a collateral issue, which would have necessitated essentially a trial within a trial. Pantaleon's offer of proof was weaker than that of the *Tidwell* defendant since there was no evidence the victim had ever made inconsistent statements regarding the alleged rape by Bernardo. Given the precedent on this issue, and the reasonableness of the trial court's ruling in light of the surrounding circumstances, we find no abuse of discretion.

Pantaleon's due process claims have been forfeited as a result of his dual failure to present timely constitutional arguments and to advance at trial the theories upon which he now relies. (Cf. *People v. Morrison* (2004) 34 Cal.4th 698, 711-712 (*Morrison*).) As a condition precedent to challenging evidentiary rulings on appeal, Evidence Code section 354 requires that the "substance, purpose, and relevance of the excluded evidence was made known to the court by the questions asked, an offer of proof, or by any other means." (Evid. Code, § 354, subd. (a); *Morrison*, *supra*, 34 Cal.4th at p. 711.) Pantaleon never indicated that he wanted to introduce evidence of the victim's allegations against Bernardo to support a theory of third party culpability, i.e., to show Bernardo had in fact raped the victim during her pre-teen years and that she was confused as to which uncle committed the crime. Likewise, there was no mention of any federal constitutional implications underlying the trial court's ruling.

Failure to raise a distinct constitutional claim at trial forfeits the issue on appeal. (*People v. Fuiava* (2012) 53 Cal.4th 622, 670.) This rule does not apply "when 'the new arguments do not invoke facts or legal standards different from those the trial court itself was asked to apply, but merely assert that the trial court's act or omission, insofar as wrong *for the reasons actually presented to the court*, had the additional legal

10.

consequence of violating the Constitution.'" (*People v. Tully* (2012) 54 Cal.4th 952, 979-980, italics added.) It is difficult to see how this exception would apply here, since Pantaleon has adopted an entirely new position regarding Bernardo's involvement in the case. "A party cannot argue the court erred in failing to conduct an analysis it was not asked to conduct." (*People v. Partida* (2005) 37 Cal.4th 428, 435 (*Partida*).)

Forfeiture aside, Pantaleon fails to explain how the trial court's ruling could be construed as an abuse of discretion if the evidence had been considered in the context of third party culpability. (See *Elliott, supra,* 53 Cal.4th at p. 581 ["A trial court's ruling excluding third party culpability evidence is reviewed for abuse of discretion."].) The relevance of the victim's prior rape allegation hinged upon Pantaleon's ability to present evidence linking Bernardo to the exact same crimes he was accused of committing, which his trial counsel admitted was not possible. Moreover, the idea that Pantaleon's niece was confused about which of her relatives had abused her is a speculative proposition given the state of the evidence when the court made its ruling; the victim alleged both uncles had raped her when she was 10 or 11 years old, and Bernardo denied the accusation entirely. "[E]xclusion of evidence that produces only speculative inferences is not an abuse of discretion." (*People v. Babbitt* (1988) 45 Cal.3d 660, 684; accord, *Morrison*, *supra*, 34 Cal.4th at p. 711.)

Since the trial court's ruling did not constitute an abuse of discretion under Evidence Code section 352, Pantaleon's constitutional claims fail on the merits. Barring rare circumstances not present here, "application of the ordinary rules of evidence under state law does not violate a criminal defendant's federal constitutional right to present a defense, because trial courts retain the intrinsic power under state law to exercise discretion to control the admission of evidence at trial." (*People v. Abilez* (2007) 41 Cal.4th 472, 503; *People v. Snow* (2003) 30 Cal.4th 43, 90 ["Application of the ordinary rules of evidence, such as Evidence Code section 352, generally does not deprive the defendant of the opportunity to present a defense …"].)

11.

**Claims Related to California's Invasion of Privacy Act**

Background

The victim disclosed her experiences of childhood sexual abuse to a boyfriend named Richard when she was 15 years old. Richard testified at trial, confirming the victim had told him she was sexually assaulted by Pantaleon when she was between the ages of 7 and 12. Upon learning this information, Richard contacted Pantaleon by telephone and confronted him about the victim's allegations. According to Richard's testimony, Pantaleon began to cry and said that he was sorry. Unbeknownst to Pantaleon, Richard had set up a three-way conference call with the victim which allowed her to secretly listen in on the conversation.

Pantaleon claims Richard's testimony about the three-way phone call was inadmissible pursuant to certain provisions of the Penal Code which require exclusion of evidence obtained through illegal wiretapping or eavesdropping. No such arguments were presented at trial. However, Pantaleon contends that his trial attorney's failure to raise these points constituted ineffective assistance of counsel. We address the merits of his contentions in order to dispose of the latter claim.

Standard of Review

"Absent fundamental unfairness, state law error in admitting evidence is subject to the traditional *Watson* test: The reviewing court must ask whether it is reasonably probable the verdict would have been more favorable to the defendant absent the error." (*Partida*, *supra*, 37 Cal.4th at p. 439, citing *People v. Watson* (1956) 46 Cal.2d 818, 836.) Ineffective assistance of counsel is a claim of constitutional dimension, but the analysis for prejudice is substantially the same. (See *Richardson v. Superior Court* (2008) 43 Cal.4th 1040, 1050.) An appellant's convictions must be affirmed unless it is shown that but for counsel's unprofessional errors, the outcome of the case would have been different. (*People v. Anderson* (2001) 25 Cal.4th 543, 569.)

Analysis

Pantaleon's arguments rely on the text of sections 631 and 632, which are part of California's Invasion of Privacy Act. Section 631 criminalizes the act of wiretapping and/or making other unauthorized connections with any telephone line or similar communication system. (§ 631, subd. (a).) Section 632 is an eavesdropping statute which makes it illegal for a person to eavesdrop on any confidential communication by means of an amplifying or recording device without the consent of all parties to the confidential communication. (§ 632, subd. (a).) Both statutes contain the following language: "Except as proof in an action or prosecution for violation of this section, no evidence obtained in violation of this section shall be admissible in any judicial, administrative, legislative, or other proceeding." (§§ 631, subd. (c); 632, subd. (d).)

Respondent persuasively argues that the exclusionary provisions of sections 631 and 632 are superseded by the "Truth-in-Evidence" provision of the Victims' Bill of Rights found in article I, section 28 of the California Constitution. Pursuant to a victim's right to truth-in-evidence, "[e]xcept as provided by statute hereafter enacted by a two-thirds vote of the membership in each house of the Legislature, relevant evidence shall not be excluded in any criminal proceeding … ." (Cal. Const., art. I, § 28, subd. (f)(2).) Respondent's position mirrors the analysis set forth in *People v. Ratekin* (1989) 212 Cal.App.3d 1165 (*Ratekin*), which explains that the enactment of the Truth-in-Evidence provision following the passage of Proposition 8 in 1982 effectively nullified the exclusionary rules in sections 631 and 632 within the context of criminal proceedings. (*Ratekin*, *supra*, 212 Cal.App.3d at pp. 1168-1169.) Pantaleon does not attempt to refute this analysis in his Reply.

Even were we to assume an error occurred under state law, and that defense counsel was negligent in failing to recognize the error, Pantaleon has not demonstrated the possibility of prejudice. By far, the most damaging evidence at trial was the recording of his lengthy and detailed confession to police. The recording of his earlier conversation with the victim was also highly incriminating. Richard's testimony

13.

concerning his own telephone conversation with Pantaleon was arguably cumulative of both pieces of evidence, and certainly no more probative of appellant's guilt. Under these circumstances, it is not reasonably probable that the jury would have reached a different verdict had Richard's testimony been excluded.

**Statute of Limitations**

Appellant revisits a statute of limitations argument that was presented below as part of a motion for new trial. As we explain, the claim was properly rejected by the trial court.

Pantaleon was charged by amended information with 18 counts of committing lewd acts upon a child in violation of section 288, subdivision (a). Each of these crimes was alleged to have occurred sometime between May 30, 1997 and May 29, 2001. Citing the six-year statute of limitations set forth in current and former versions of section 800,[2] Pantaleon asserts that the charges were time barred when the original information was filed in 2010.

The standard limitations period for a violation of section 288 is indeed six years because the offense falls within the category of crimes punishable by imprisonment for up to eight years or more. (§ 800; *People v. Smith* (2011) 198 Cal.App.4th 415, 424.) Mechanical application of section 800 would lead to the conclusion that the statute of limitations in this case expired sometime between May 2003 and May 2007. However, other provisions of the Penal Code must be taken into account to determine the timeliness of the charges.

On January 1, 2001, more than two years prior to the earliest expiration date under the six-year limitations period, a new law was enacted which extended the statute of

---

[2] Section 800 provides: "Except as provided in Section 799, prosecution for an offense punishable by imprisonment in the state prison for eight years or more or by imprisonment pursuant to subdivision (h) of Section 1170 for eight years or more shall be commenced within six years after commission of the offense."

14.

limitations for felonies enumerated in section 290, including violations of section 288. (Former § 803, subd. (h), as enacted by Stats. 2000, ch. 235, § 1; *People v. Simmons* (2012) 210 Cal.App.4th 778, 788 (*Simmons*).) Former section 803, subdivision (h)(1), provided in relevant part: "Notwithstanding the limitation of time described in Section 800, the limitations period for commencing prosecution for a felony offense described in subparagraph (A) of paragraph (2) of subdivision (a) of Section 290, where the limitations period set forth in Section 800 has not expired as of January 1, 2001, or the offense is committed on or after January 1, 2001, shall be 10 years from the commission of the offense… ." Although former section 803 underwent multiple changes in subsequent years, the 10-year statute of limitations applicable to section 288, subdivision (a), remained in effect at all times relevant to this case. (*In re White* (2008) 163 Cal.App.4th 1576, 1580-1581.) Therefore, effective January 2001, the applicable limitations period for Pantaleon's crimes ended no earlier than May 2007 and no later than May 2011.

We now turn to Section 801.1, subdivision (a), which provides that prosecution of certain sex offenses, including section 288, "may be commenced any time prior to the victim's 28th birthday" if the crime "is alleged to have been committed when the victim was under the age of 18 years." This subdivision became effective January 1, 2006. (Stats. 2005, ch. 479, § 2; *Simmons*, *supra*, 210 Cal. App.4th at p. 787.) Pantaleon's niece was born in 1990 and was only 21 years old at the time of trial. Ergo, since none of the section 288 offenses were time barred as of January 1, 2006, Pantaleon's statute of limitations argument fails. (*Simmons*, *supra*, 210 Cal. App.4th at p. 787; § 803.6, subd. (b).)

**Sufficiency of the Amended Information**

As mentioned, Pantaleon was charged by amended information with committing violations of sections 269 and 288 during a time period spanning from May 30, 1997 through May 29, 2001. The charging document did not further specify any of the dates

15.

on which the offenses occurred. Pantaleon contends the "generic" nature of the pleadings violated his constitutional due process rights insofar as he was precluded "from ascertaining specific dates and times such that he might have provided an alibi or other defense." Setting aside that such arguments should have been raised by demurrer, we reject the claim as meritless.

Pursuant to section 955, "The precise time at which the offense was committed need not be stated in the accusatory pleading, but it may be alleged to have been committed at any time before the finding or filing thereof, *except where the time is a material ingredient in the offense*." (Italics added.) The caveat in this statutory language does not substantiate Pantaleon's due process argument. A defendant "has no right to notice of the specific time or place of an offense, so long as it occurred within the applicable limitation period." (*People v. Jones* (1990) 51 Cal.3d 294, 317 (*Jones*).) This is so because "'in modern criminal prosecutions initiated by informations, the transcript of the preliminary hearing, not the accusatory pleading, affords [a] defendant practical notice of the criminal acts against which he must defend.'" (*Ibid.*, quoting *People v. Gordon* (1985) 165 Cal.App.3d 839, 869; see also, *People v. Jennings* (1991) 53 Cal.3d 334, 358 ["Under modern pleading procedures, notice of the particular circumstances of an alleged crime is provided by the evidence presented to the committing magistrate at the preliminary examination, not by a factually detailed information."].)

In *Jones*, *supra*, the California Supreme Court held that to substantiate charges of abuse under section 288, the victim need only "describe the kind of act or acts committed with sufficient specificity … (e.g., lewd conduct, intercourse, oral copulation or sodomy)"; "describe the number of acts committed with sufficient certainty to support each of the counts alleged in the information or indictment"; and "describe the general time period in which these acts occurred … to assure the acts were committed within the applicable limitation period." (*Jones*, *supra*, 51 Cal.3d at p. 316, italics omitted.) The accused must be prepared to defend against all offenses of the kind alleged in the

16.

information "as are shown by evidence at the preliminary hearing to have occurred within the timeframe pleaded in the information." (*Id*. at p. 317.) Therefore, the lack of detail in the charging document did not result in a violation of Pantaleon's due process rights.

## **<u>DISPOSITION</u>**

The judgment is affirmed.


_____

Gomes, Acting P.J.

WE CONCUR:


_____

Detjen, J.


_____

Franson, J.