Filed 9/10/14  P. v. Ahern CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>KEVIN MICHAEL AHERN,<br><br>    Defendant and Appellant. | B248596<br><br>(Los Angeles County<br>Super. Ct. No. LA068747) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Joseph A. Brandolino, Judge.  Affirmed.

Vanessa Place, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Yun K. Lee and William H. Shin, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Kevin Ahern appeals from a judgment following a jury trial in which he was convicted of lewd acts upon a child of 14 years (Pen. Code, § 288, subd. (c)(1)) and oral copulation with a person under 16 years of age (Pen. Code, § 288a, subd. (b)(2)). He contends the trial court abused its discretion in excluding evidence of photographs and online content of the victim engaged in graphic or sexual behavior. We affirm.

**Statement of Facts**

**1.      Evidence Presented at Trial**

I.H. was 13 years old and living in Hidden Hills with her family when Ahern sent her a message through Facebook on July 18, 2011. Ahern was 37 years old. They began to exchange Facebook messages, through which I.H. told Ahern she was only 13 years old. A few days later, I.H. and Ahern exchanged phone numbers and began to send each other text messages. They discussed their common interests, I.H.'s interest in writing and drawing, and events going on in their lives. Ahern repeatedly said such things as, "Sweet dreams [I.H.]. Nite nite," followed by a heart symbol, and frequently asked I.H. to meet him. When I.H. asked him why he wanted to meet, he responded, "You seem so sweet and down to earth. I love that! I just rly wanna get to know u better. Hang out."

Finally, on August 9, 2011, I.H. and Ahern agreed to meet at a local shopping area. I.H. rode her bike there and met Ahern at a bookstore. Ahern gave her a hug, and they left the bookstore to sit outside at some tables and talk. Ahern told I.H. he was 22 years old. After talking for some time, I.H. went home.

That night, Ahern sent I.H. a text message which stated, "[I.H.]! It was so wonderful meeting u and hanging out with you!!! You're beautiful in every way. . . truly. I can't wait to see you again," followed by a heart symbol. Later he wrote, "You're gorgeous, srsly," and "I wanna come over and cuddle up and watch movies with you!!!," followed by a heart symbol. They then proceeded to make plans to get together for a "movie night."

I.H. agreed to meet Ahern at his house on August 12, 2011. Once there, they went into his bedroom and Ahern showed her some of his music and music videos. Ahern then put on a movie and they laid down on his bed. At some point, Ahern and I.H. undressed.

2

He took her hand, put it on his penis, and made her rub it until he became erect. Ahern then put his penis in her mouth and used his hands to move her head until he ejaculated. Ahern next rubbed his penis against her vagina and whispered that they were not going to have sex. He then kissed I.H. and pushed his penis inside her vagina. He asked I.H. to bring her hand down, and she felt his penis all the way inside her. He then removed his penis and put it in her mouth until he ejaculated again. Afterwards, they got dressed and Ahern asked her to sleep over. She declined, and he drove her home.

In the following days, I.H. and Ahern continued to exchange text messages. I.H. repeatedly told him that her vagina hurt. She asked if she could tell her sister about what had happened, as she had missed her period and was scared. Ahern urged her not to tell her sister, counseling that doing so would cause significant problems and would "be more stressful than anything."

On August 23, 2011, I.H.'s mother learned what had happened by reading I.H.'s text messages, and called the police. Two days later, a detective with the Los Angeles County Sheriff's Department arranged for I.H. to place a phone call to Ahern, which the detective recorded. During the call, I.H. told Ahern she was sore, and Ahern replied, "I think that probably what happened was because you had sex you know, it . . . was . . . maybe a little traumatic for you . . . ." I.H. asked him if he ejaculated inside her, and Ahern responded that "nothing like that I think would have happened . . . I honestly think you're ok." He assured her with one hundred percent certainty she was not pregnant. When I.H. asked him to promise he did not ejaculate inside her, he stated he was "absolutely positive" that did not happen. When she asked if he used a condom and about the length of time they had sex, he responded that he could not recall. Ahern was subsequently arrested.

An information charged Ahern with two counts of lewd acts upon a child of 14 years (Pen. Code, § 288, subd. (c)(1)) and one count of oral copulation with a person under 16 years of age (Pen. Code, § 288a, subd. (b)(2)). While released on bail, Ahern fled to Mexico, where he was found by Mexican authorities and returned to the United States.

3

At trial, Ahern maintained that he did not have sex with I.H. He testified that while at his house on August 12, 2011, I.H. confided to him that the previous night she had sex for the first time with a man in the neighborhood, and was upset because he was now ignoring her. She asked Ahern if he would pose as her boyfriend when she called him or sent him a text message to make the other man jealous, and he agreed. Ahern explained that when I.H. contacted him to ask about their sexual encounter, he was playing along with her request that he act like her boyfriend. When he received the phone call, he thought she was talking about having sex with another man, but played along in case the man was listening, believing she wanted him to answer the questions in a manner that would make the other man jealous.

The jury found Ahern guilty on all three counts. Ahern also pled no contest to one count of failure to appear (Pen. Code, § 1320.5) in a second case. The trial court sentenced him to three years and eight months in state prison. Ahern timely appealed.

2. **Evidence at Issue on Appeal**

Prior to trial, defense counsel proffered evidence of photographs and other material I.H. had posted online, offered to show she was abnormal and therefore not credible. Specifically, defense counsel sought to introduce the following: (1) two Facebook photographs of I.H. wearing zombie-like bloody face makeup; (2) a staged Facebook photograph of I.H. holding a handsaw over a topless young man who appeared to have blood on his chest; (3) a Facebook photograph of a person's neck with a large welt; (4) a Facebook photograph of a forearm with three welts; (5) a Facebook photograph of a burning object in a field; (6) a Facebook photograph of what appeared to be a sofa burning in a field; (7) a Facebook photograph of a burning object on a sofa; (8) a Facebook photograph of a chalk drawing of a stick figure with breasts and a penis; (9) a Facebook photograph of I.H. in a yellow costume holding a long red balloon between her legs, simulating an erect penis; (10) a Facebook drawing of an ejaculating penis; (11) a Facebook photograph of I.H. and another person touching tongues; (12) a printout of I.H.'s profile on the website Scene Queen, accompanied by a definition of Scene Queen from Urban Dictionary as a female who dates a man in a band and/or sleeps with a lot of

4

men; and (13) a Facebook photograph of an anime drawing of a male labeled "Richtard!" with a speech bubble stating "I am So <u>NOT</u> a rapist."[1]

Defense counsel contended the photographs were relevant to I.H.'s credibility, as they showed moral turpitude, a character for dramatization or fantasy, and mental illness. Defense counsel argued the drawing of "Richtard" was relevant to show I.H. had previously accused someone of rape, and the Scene Queen profile was relevant to show I.H. wanted to date and have sex with someone in a band.

The trial court determined the photographs depicting violence or injury were irrelevant, as they did not relate to moral turpitude, and in any event would not survive an analysis under Evidence Code section 352. The court further determined that because consent was not at issue, the material depicting sexual content was irrelevant to show I.H. was interested in sex, and also would not survive a section 352 analysis. Finally, the trial court found the drawing of "Richtard" appeared to be a joke, not a rape accusation, and was therefore irrelevant.

## Discussion

Ahern argues the trial court abused its discretion in refusing to admit I.H.'s Facebook photographs and online content because they showed her "propensity to fabricate episodes of sexual transgression and victimization." We disagree.

Only relevant evidence is admissible. (Evid. Code, § 350.) Relevant evidence is "evidence having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.) Relevant evidence may nonetheless be excluded under Evidence Code section 352 if its probative value is substantially outweighed by the probability that its admission will create substantial danger of undue prejudice or of misleading the jury. (Evid. Code, § 352.) The trial court has wide discretion in determining the relevancy and admissibility of evidence. (*People*

---

[1] For purposes of clarity, we will characterize exhibits 1-7 as photographs depicting violence or injury and exhibits 7-12 as material depicting sexual content. We will address exhibit 13 independently.

5

*v. Benavides* (2005) 35 Cal.4th 69, 90.) We review a trial court's rulings on the admissibility of evidence for abuse of discretion. (*Ibid.*)

Ahern argues the excluded evidence showed I.H.'s capacity to falsely accuse someone of a crime, and was therefore relevant to impugn her credibility. Evidence of a victim's character (in the form of an opinion, evidence of reputation, or evidence of specific instances of conduct) may be admissible to prove conduct of the victim in conformity with that character. (Evid. Code, § 1103, subd. (a).) To determine the credibility of a witness, Evidence Code section 780 provides that the court or jury may consider any matter that has any tendency in reason to prove or disprove the truthfulness of her testimony at the hearing, including but not limited to any of the following: (a) her demeanor while testifying; (b) the character of her testimony; (c) her capacity to perceive, recollect, or communicate; (d) her opportunity to perceive; (e) her character for honesty or veracity; (f) the existence or nonexistence of a bias, interest, or other motive; (g) a prior consistent statement; (h) a prior inconsistent statement; (i) the existence or nonexistence of any fact testified to by her; (j) her attitude toward the action or toward the giving of testimony; and (k) her admission of untruthfulness. Admission of evidence of a victim's character or credibility, however, is still subject to evidentiary rules of relevance and undue prejudice. (See *People v. Brown* (2003) 31 Cal.4th 518, 544-545.) "The court is not required to admit evidence that merely makes the victim of a crime look bad." (*People v. Kelly* (1992) 1 Cal.4th 495, 523.)

We fail to see how the proffered evidence has any tendency in reason to impugn I.H.'s credibility. First, the photographs depicting violence or injury have no bearing on I.H.'s capacity to tell the truth under oath. Photographs of a teenager wearing zombie-like makeup, enacting violent scenes, documenting injuries, or burning objects evidences at most a graphic and perhaps peculiar imagination. Had I.H. testified she had never engaged in violent or graphic enactments, the photographs arguably would have been relevant to challenge her credibility, but no such testimony occurred.

Ahern contends the photographs are relevant to show mental illness. We disagree. Mental illness may be relevant to the issue of credibility if such illness affects the

6

witness's ability to perceive, recall, or describe the events in question. (See *People v. Gurule* (2002) 28 Cal.4th 557, 591-592.) Nothing in the photographs depicting violence or injury suggests I.H. was unable to perceive, recall, or describe her sexual encounter with Ahern.

Second, evidence that I.H. was familiar with male sex organs, engaged in sexual conduct, or had a profile on a social networking site with an arguable connection to sexual activity has no tendency in reason to show I.H. would lie under oath.[2] Ahern argues the sexual images are relevant to explain I.H.'s knowledge of male anatomy and ejaculation from a source other than her sexual encounter with Ahern. But the source of I.H.'s knowledge of sexual conduct was not at issue, as I.H. made no claim that she was unfamiliar with sexual conduct prior to her encounter with Ahern.[3]

Lastly, Ahern argues the stylized drawing of a male labeled "Richtard," accompanied by a speech bubble stating "I am So NOT a rapist," was relevant to show I.H. was likely to falsely accuse someone of rape. We disagree. The trial court concluded the drawing was a joke, and our examination of it sheds no additional light on its meaning or purpose. A joke about rape, however distasteful, does not evidence a propensity to lie about being raped. Had the drawing proven to be a prior false

---

[2] The parties agree the material depicting sexual content was not offered to show I.H.'s propensity to engage in sexual activity, nor would it have been admissible to show such propensity, as consent was not at issue.

[3] We note that evidence of a victim's prior sexual conduct may be used to attack the victim's credibility (Evid. Code, § 1103, subd. (c)(5)), subject to the procedural mandates of Evidence Code section 782, which requires that the defense file a written motion accompanied by an offer of proof explaining the relevancy of evidence of sexual conduct sought to be admitted. (Evid. Code, § 782, subd. (a).) If the court finds the offer of proof to be sufficient, it shall permit the defense to question the victim outside the presence of the jury regarding the offer of proof. (*Ibid.*) If the court finds the proffered evidence is relevant and not unduly prejudicial, it shall allow the evidence to be introduced. (*Ibid.*) Here, had any of the proffered sexual material been relevant to attack I.H.'s credibility, Ahern would have had to comply with section 782. There is no evidence he did so.

accusation of rape, it would have been relevant to I.H.'s credibility. (See *People v. Tidwell* (2008) 163 Cal.App.4th 1447, 1456.) But nothing suggests the drawing was anything but a joke, which has no tendency in reason to show I.H. would lie under oath.

The trial court was well within its discretion to exclude admission of the proffered evidence.

## Disposition

The judgment is affirmed.

NOT TO BE PUBLISHED.


                                                    CHANEY, Acting P. J.


We concur:


        JOHNSON, J.


        MILLER, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.