Filed 5/1/26  P. v. Stallworth CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br> v. <br> JOSEPH STALLWORTH, <br><br> Defendant and Appellant. | A169090 <br><br><br> (Contra Costa County <br> Super. Ct. No. 022200179) |

Defendant appeals from his conviction following a jury trial for multiple counts of felony sex offenses committed against his niece and his daughter, one count of felony domestic violence against his ex-wife with a true finding of personal infliction of great bodily injury, one count of misdemeanor assault by means likely to produce great bodily injury against his ex-wife, and one count of felony dissuading a witness by force or threat. On appeal he asserts a lack of substantial evidence supports his convictions for the sixth count of forcible lewd conduct as to Jane Doe 1 and for dissuading a witness, instructional error regarding the elements of the dissuading a witness count, and that the trial court's evidentiary rulings regarding the victims' prior sexual assault allegations violated his constitutional rights.  Defendant also argues sentencing error as to the 25-year-to-life terms imposed pursuant to Penal Code section 667.61,

1

subdivision (j)(2).[1]  We reject defendant's claims except for his sentencing error argument.  We remand with directions to correct the sentencing error.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.  *Information*

On March 7, 2023, the Contra Costa County District Attorney filed an information charging defendant with 22 counts against four victims.[2]  As to Jane Doe 1 (defendant's niece), defendant was charged with four counts of aggravated sexual assault of a child (rape) (§§ 269, subd. (a)(1), 261, subd. (a)(2); counts 1–4); one count of aggravated sexual assault of a child (oral copulation) (§§ 269, subd. (a)(4), 288a, subds. (c), (d); count 5); and six counts of forcible lewd act upon a child under 14 years of age (§ 288, subd. (b)(1); counts 6–11), occurring between December 10, 2010, and February 25, 2011.

As to Jane Doe 2 (defendant's older daughter), defendant was charged with one count of aggravated sexual assault of a child (sexual penetration) (§§ 269, subd. (a)(5), 289, subd. (a); count 12); four counts of forcible lewd act upon a child under 14 years of age (§ 288, subd. (b)(1); counts 13–16); and one count of dissuading a witness by force or threat (§ 136.1, subd. (c); count 19). The sexual assault counts related to Doe 2 allegedly occurred between July 1, 2019, and August 29, 2020.

As to Jane Doe 3 (defendant's younger daughter), defendant was charged with three counts of forcible lewd acts upon a child under 14 years of age (§ 288, subd. (b)(1); counts 20–22), occurring between March 7, 2018, and March 7, 2019.  The information further alleged the aggravated circumstance

---

[1] All statutory references are to the Penal Code unless otherwise stated.

[2] The information identifies the child victims as Jane Doe 1, Jane Doe 2, and Jane Doe 3, and the domestic violence victim as Confidential Victim.  We use the same pseudonyms.

that defendant committed the forcible lewd act crimes against multiple victims within the meaning of section 667.61, subdivisions (a) and (e) (counts 6–11, 13–16, 20–22).

As to confidential victim (CV) (who is Doe 2's mother), defendant was charged with one count of felony domestic violence with the enhancement of great bodily injury (§§ 273.5, subd. (a), 12022.7, subd. (e); count 17) and one count of misdemeanor assault by means likely to produce great bodily injury (§ 245, subd. (a)(4); count 18), both occurring on August 29, 2020.

## II.  *Trial Testimony*

CV and defendant were married from 2006 to 2012.  They had a child together, Doe 2, who was born in August 2007.  At some point in the relationship, CV and defendant divorced.  However, CV continued to live with defendant after they divorced.  During the course of their relationship, defendant physically abused CV and hit Doe 2 with a belt when she got into trouble.  In August 2020, Doe 2 told CV that defendant had been touching her in the back room of the house, where he slept.  CV decided to go to the police and leave defendant.  On August 29, 2020, defendant told CV to take their aluminum cans to a recycling center.  It was the same day that CV decided to leave the defendant.  Since CV was worried that defendant would molest Doe 2 if she were left home alone with him, CV took Doe 2 with her.

While CV was out, defendant called her on her cellphone.  He cursed at her and questioned why she took Doe 2 with her.  When CV returned to the house with Doe 2, defendant yelled and cursed at Doe 2, saying that she did not listen to him.  Defendant threatened CV that if she interfered with his disciplining his child he would "let [her] have it."  Defendant then "bum-rushed" CV by the front door, slammed her head into a glass table, and punched her multiple times in the head.  CV blacked out for a minute, and

3

when she regained consciousness she pushed defendant off her.  CV saw Doe 2 with her cellphone, trying to call the police.  Doe 2 was able to reach the 911 operator.  Defendant asked Doe 2 what she was doing with her phone, and Doe 2 said it was none of his business.  Then defendant knocked the phone out of Doe 2's hand.  The altercation was recorded by the 911 operator.

A recording of the 911 call was played for the jury:  "[**Q.**] 911 What is the address of your emergency?

"**Female:**  He has . . . .

"**Male:**  Who are you on the phone with?

"**Female:**  It's none of your business.  Let go.

"**Q.**  Hello, 911.  What's the address of your emergency?

"**Male:**  Who are you on the fuckin' phone with?  (voices overlap)

"**Female:**  Stop (crying)

"**Q.**  Hello?"

CV and defendant continued tussling as CV tried to leave the house with Doe 2.  Defendant grabbed Doe 2 around her neck as CV tried to pull her out the front door.  CV kicked defendant in the leg, and she ran out of the house with Doe 2.  As CV and Doe 2 tried to drive away in CV's van, the defendant stood in front of the van, blocking their exit.  However, he moved out of the way when CV accelerated.  They drove to a nearby gas station where they signaled to Contra Costa Deputy Sheriff Scott Hoshi-Nagamoto, who was responding to a 911 hangup call.  CV told the deputy that defendant had hit her and molested Doe 2.  The deputy observed visible injuries on CV.  Defendant arrived at the gas station and initially acted as though he had done nothing wrong.  He was arrested.

Doe 2 was 12 years old when defendant began molesting her. Defendant touched Doe 2's vaginal area with his hand over her clothing five or six times and under her clothes twice. The touching happened in defendant's back room in the house they shared. When defendant touched Doe 2 under her clothes, his fingers moved between the labia of her vagina but did not "go inside." On one occasion, defendant got on top of Doe 2, straddled her with his legs, and touched her chest and "private part" with his hands. She tried to push him off, but he said he was her dad and could do what he wanted. On another occasion, Doe 2's best friend was sleeping over and defendant called Doe 2 back to his room and closed the door. Doe 2 was gone for about 30 minutes, and when she returned she was irritable and would not talk to her best friend about what happened in the back room with defendant. Defendant threatened Doe 2 that there would be consequences if she told anyone. Doe 2 was afraid of defendant, who disciplined her by hitting her with a belt. After defendant's arrest, Doe 2 told her friend that defendant molested her.

Doe 1 is defendant's niece. In 2010, when she was 12 to 13 years old, she frequently visited defendant's home. Defendant allowed Doe 1 to spend time with a friend she was not supposed to be around. Toward the end of 2010, Doe 1 asked defendant to give her a cellphone. Defendant asked for something in return. Doe 1 said to him that she would get good grades in school for the cellphone. But defendant wanted to have sex with Doe 1 in exchange for the phone. Doe 1 was disgusted and initially told him no. In November or December 2010, while Doe 1 and defendant were at his home alone, they were "play fighting" and defendant led her to his bedroom. He lifted her onto the bed and pinned her down by her hands. He placed his body on top of hers, between her legs. He told her to "shake [her] butt" if she

wanted it. Doe 1 stayed still. Defendant took out a condom, pinned Doe 1's legs down, and penetrated her with his penis. Further, defendant touched Doe 1's breast and told her to hold him. When he finished, he removed the condom, went to the bathroom, and flushed it down the toilet. He told Doe 1 to "keep it between just us."

Another incident occurred in the computer room in defendant's home around Christmas 2010. Doe 1 was sleeping, and defendant came in and asked her if she wanted some food. She did not respond and went back to sleep. She woke up with defendant on top of her. Doe 1 tried to stop defendant, and he told her to "shut up before he put something inside of [her]." He took off her pants, put on a condom, and had sex with her. He removed the condom and told Doe 1 to orally copulate him. She said no, and he forced her head down and made her orally copulate him. A third incident occurred between the end of 2010 and early 2011, also in the computer room. When defendant came into the computer room, Doe 1 asked him to leave. He got angry and then pinned her down, removed her pants, put on a condom, and had sex with her.

Another incident occurred in the game room of the house. While Doe 1 was playing pool, defendant came into the room and started to play fight with her. Doe 1 hit defendant with a pool cue. He got angry, bent her over the pool table, and had sex with her. Then he sat on the couch and told her to orally copulate him. Doe 1 said no, and he took her head and forced her to perform oral sex. Defendant then made Doe 1 get on top of him. He touched her breasts while he again had sexual intercourse with her.

The final incident involving Doe 1 occurred in February 2011. Doe 1 was at defendant's house, in the computer room, talking on the phone defendant gave her. He asked her who she was talking to, and when she told

6

him, he became angry, snatched her phone away, and smashed it. Doe 1 screamed at defendant. He then pushed her onto the bed, forcefully took off Doe 1's pants, and had intercourse with her. When defendant was finished, he said he would never do it again. Doe 1's testimony provided specific details of five rapes. However, she testified that defendant raped her a total of six times.

Doe 1 eventually reported defendant's sexual abuse to her grandmother, who then told Doe 1's mother. Doe 1's mother reported the abuse to the police. In March 2011, Doe 1 was interviewed by the Children's Interview Center (CIC). In the interview, Doe 1 stated defendant raped her six times and she gave details of four incidents that were consistent with her trial testimony.[3]

Defendant denied raping Doe 1 and denied molesting Doe 2. He denied he offered Doe 1 a cellphone in exchange for sex. He said he had a spare cellphone that he gave to Doe 1. Defendant and Doe 1 had disputes over her using her cellphone to call her boyfriend. During one dispute, Doe 1 threw her phone at defendant and he took it away. Defendant acknowledged calling Doe 2 into his bedroom and closing the door for up to 30 minutes at a time either to talk with her or to watch TV. He denied hitting CV on August 29, 2020, but admitted hitting her on prior occasions. He testified that CV fell down the stairs on August 29, 2020. Defendant did not know that Doe 2 had called 911 when he grabbed the phone from her. He thought she was on the phone with one of her friends.

---

[3] Doe 3, defendant's younger daughter, testified that defendant inappropriately touched her inner thighs, back, chest, and vagina several times beginning when she was five years old. The jury was unable to reach a verdict as to the counts regarding Doe 3 (counts 20–22).

## III.   *Verdict and Sentence*

The jury found defendant guilty as to all counts involving Doe 1:  four counts of aggravated sexual assault of a child (§ 269, subd. (a)(1) [rape]; counts 1–4); one count of aggravated sexual assault of a child (§ 269, subd. (a)(4) [oral copulation]; count 5); and six counts of forcible lewd act upon a child under 14 years of age (§ 288, subd. (b)(1); counts 6–11).  It found defendant guilty on the following counts involving Doe 2:  four counts of forcible lewd act upon a child under 14 years of age (§ 288, subd. (b)(1); counts 13–16); and one count of dissuading a witness by force or threat (§ 136.1, subd. (c)(1); count 19).  Defendant was found guilty as to all counts involving CV:  one count of felony domestic violence and found true the enhancement with great bodily injury (§§ 273.5, subd. (a), 12022.7, subd. (e); count 17); and one count of misdemeanor assault by means likely to produce great bodily injury (§ 245, subd. (a)(4); count 18).  The jury also found true the multiple victim allegation (§ 667.61, subd. (e)(4); counts 6–11, 13–16).

The jury was unable to reach a verdict on the counts regarding Doe 3 (counts 20–22) and on count 12 (Doe 2; aggravated sexual assault of a child [sexual penetration]; § 269, subd. (a)(5)).  These counts were dismissed.

Defendant was sentenced to consecutive 25-year-to-life terms for 10 counts of forcible lewd act (§§ 288, subd. (b)(1), 667.61; counts 6–11, 13–16), plus 15 years to life for one count of forcible oral copulation (§ 269, subd. (a)(4); count 5), plus six years for domestic violence with great bodily injury enhancement (§§ 273.5, subd. (a), 12022.7, subd. (e); count 17).  He was also sentenced to a concurrent term of three years for count 19, dissuading a witness (§ 136.1, subd. (c)(1)); a concurrent term of one year for assault by

means likely to produce great bodily injury (§ 245; count 18)[4] and concurrent terms of 15 years to life on counts 1–4.  The total indeterminate prison term was 271 years to life.

## DISCUSSION

### I. *Substantial Evidence Supports Conviction on Six Counts of Forcible Lewd Acts as to Doe 1 (Counts 6–11)*

Defendant argues that because Doe 1 only provided details of five instances of forcible lewd acts, insufficient evidence supports his conviction as to one of the six offenses as alleged in counts 6–11.  He contends that Doe 1's generic testimony is insufficient to support a conviction for one of the six offenses.  We disagree.

Defendant acknowledges that in *People v. Jones* (1990) 51 Cal.3d 294 (*Jones*), our high court addressed whether "generic" testimony of a victim may be sufficient to sustain a conviction for child molestation.  *Jones* held that "generic" testimony regarding multiple molestations over a certain time period, even if lacking in details as to the specific dates, times, places, or circumstances, is sufficient to support a conviction.  (*Id.* at pp. 315–316.) *Jones* explains that "the particular details surrounding a child molestation charge are not elements of the offense and are unnecessary to sustain a conviction."  (*Ibid.*)  Rather, to sustain a conviction, there must be evidence

---

[4] The abstract of judgment states the sentence on count 18 is one year concurrent to count 6, but it does not indicate if the sentence is stayed. However, this is inconsistent with the trial court's oral pronouncement that the term is three years stayed pursuant to section 654.  When there is a discrepancy between the oral pronouncement of sentence and the abstract of judgment, the oral pronouncement controls.  (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.)  However, here the trial court's oral pronouncement of a three-year term for a misdemeanor conviction is incorrect.  On remand, the trial court shall correct the abstract of judgment to indicate that the one-year term imposed on count 18 is stayed.

9

describing (1) "the kind of act or acts committed with sufficient specificity"; (2) "the number of acts committed with sufficient certainty to support each of the counts alleged"; and (3) "the general time period in which these acts occurred . . . ." (*Ibid.*, italics omitted.) Defendant acknowledges that Doe's testimony described five counts of rape during the period from November or December 2010 to February 2011. He also acknowledges that Doe 1 testified that defendant raped her a total of six times. However, he contends that because Doe 1 only specifically described five rapes, there is insufficient evidence to support one of the six offenses.

Defendant's attempt to distinguish *Jones* is not entirely clear. He appears to agree that the type of generic testimony regarding the frequency of proscribed acts accepted in *Jones, supra*, 51 Cal.3d 294, and in *People v. Matute* (2002) 103 Cal.App.4th 1437 constitutes sufficient evidence to support convictions on multiple counts. (*Jones*, at p. 316 [" 'twice a month' " or " 'every time we went camping' "]; *People v. Matute*, at pp. 1440–1441 [" 'a couple of times a week' "].) However, he claims Doe 1's testimony describing five specific instances of rape, and stating that it happened a total of six times, is somehow insufficient to support one of his convictions. We are unpersuaded. Doe 1 was interviewed by the CIC in March 2011, after her mother reported Doe 1's disclosure to the police. At the time, Doe 1 was 13 years old. During the interview, which was admitted into evidence, Doe 1 stated she was raped six times. At trial, Doe 1 was 26 years old. She testified about the circumstances of the first rape, which began with "play fighting" and ended with defendant's telling Doe 1 not to tell anyone what happened. She was then asked, "[H]ow many times total did this type of thing happen to you with the defendant?" and she responded, "Six." After Doe 1 testified regarding the final rape, when defendant got angry and

10

smashed her phone before he raped her, she confirmed again that it happened a total of six times. We find this testimony sufficient to support defendant's convictions on six counts of forcible lewd conduct as to Doe 1. (*Jones, supra*, 51 Cal.3d at pp. 314–315.) Doe 1 gave specific details about five of the rapes, and she testified that during the November 2010 to January 2011 time frame, defendant raped her six times. Contrary to defendant's argument, she was not required to provide particular details of each rape in order for the convictions to be sustained. (*Jones*, at pp. 315–316.) Her testimony was sufficient to establish the type of acts, the number of acts, and the time frame during which they occurred. (*Ibid.*)

## II.    *Count 19–Dissuading a Witness by Force or Threat*

Defendant makes two arguments for reversal of his conviction for dissuading a witness by force or threat (§ 136.1, subds. (b), (c)(1); count 19). First, he contends insufficient evidence supports his conviction because there is a lack of evidence that he knew Doe 2 was on the phone with 911 when he took her phone and threw it. Second, he contends the trial court erred by failing to instruct that the jury must find defendant acted " 'knowingly and maliciously.' "

### A.    Substantial Evidence Supports Conviction for Dissuading a Witness

Section 136.1, subdivision (a) states, in relevant part: "[A] person who attempts to prevent or dissuade another person who has been the victim of a crime or who is witness to a crime from doing any of the following is guilty of a public offense and shall be punished by imprisonment in a county jail for not more than one year or in the state prison: [¶] (1) Making a report of that victimization to a peace officer, a state or local law enforcement officer . . . . [¶] . . . [¶] (3) Arresting or causing or seeking the arrest of a person in connection with that victimization." Subdivision (c)(1) defines an aggravated

11

form of the crime. It states: "A person doing any of the acts described in subdivision (a) or (b) knowingly and maliciously under any one or more of the following circumstances, is guilty of a felony punishable by imprisonment in the state prison for two, three, or four years under any of the following circumstances: (1) If the act is accompanied by force or by an express or implied threat of force or violence, upon a witness, victim, or any third person." (§ 136.1, subd. (c)(1).)

Defendant contends there was no evidence that he knew Doe 2 had called 911 when he took her phone and threw it. Thus, he claims, there is insufficient evidence that he "knew he was trying to prevent Jane Doe 2 from reporting a crime and intended to do so." (CALCRIM No. 2622.) At trial, Doe 2 testified to past arguments with defendant regarding her phone use and that defendant would sometimes take her phone away. Doe 2 testified that the fight on August 29, 2020, was not related to her phone use and that her arguments with defendant regarding her phone use ended a year before defendant's arrest. Defendant further relies on his own statement on the recording of the 911 call, when he yells, "Who are you on the fuckin' phone with?" while Doe 2 is heard crying and the operator asks, "Hello?" before the call ends abruptly. He argues the facts give equal support to competing, reasonable conclusions as to his motivations for taking Doe 2's phone in the middle of the fight while she was calling 911, and therefore insufficient evidence supports his conviction.

We find sufficient evidence supports defendant's conviction. (See *People v. Sherman* (2022) 86 Cal.App.5th 402, 406, 414–415 [evidence that during ongoing assault defendant tried to prevent victim from using her phone was sufficient to support conviction for dissuasion of victim].) On the day of defendant's arrest, he became angry that CV took Doe 2 on an errand.

12

When CV and Doe 2 returned home, he yelled and cursed at CV and Doe 2. He told CV not to interfere with his disciplining his child, or he would "let [her] have it." Then he pushed CV, punched her head, and slammed her head into a glass table. CV blacked out for a minute, and when she regained consciousness, Doe 2, who witnessed the assault, was calling 911. Defendant "got mad" and yelled, "Who are you on the phone with?" Doe 2 said, "It's none of your business. Let go." Defendant then yelled, "Who are you on the fuckin' phone with?" and then grabbed the phone out of Doe 2's hand and threw it across the room as she cried, "Stop."

After defendant knocked the phone out of Doe 2's hand, he continued "tussling" with CV as she tried to leave the house with Doe 2. He put his arm around Doe 2's neck as CV tried to pull her out the front door. CV and Doe 2 eventually were able to run down the stairs and get into CV's van.

From this evidence, the jury could reasonably infer defendant knew Doe 2 was trying to call the police to get help for her mother during the ongoing assault and that defendant intended to prevent Doe 2 from reporting the assault. (See *People v. Sherman, supra*, 86 Cal.App.5th at pp. 402, 406, 414–415.) We do not agree the evidence supports a competing, reasonable conclusion that defendant was merely angry because of Doe 2's phone use in general. However, under the substantial evidence standard of review, it is not the appellate court's role to reweigh the evidence. (*People v. Miranda* (2011) 199 Cal.App.4th 1403, 1412 ["Although the jury is required to acquit a criminal defendant if it finds the evidence susceptible of two reasonable interpretations, one of which favors . . . innocence, it is the jury, not the appellate court, which must be convinced of his guilt beyond a reasonable doubt"] (*Miranda*).)

## B. Instructional Error

Defendant contends his conviction for dissuading a witness by force or threat (count 19; § 136.1, subd. (c)(1)) must be reversed for the alternative reason that the trial court failed to sua sponte instruct the jury with the malice element of section 136.1, subdivision (c)(1) and that the error was not harmless beyond a reasonable doubt. He relies on *People v. Serrano* (2022) 77 Cal.App.5th 902 (*Serrano*), which is directly on point.

Here, as in *Serrano*, the trial court instructed the jury with CALCRIM No. 252, which explained that count 19, among other charges, required a specific intent or mental state such that "[f]or you to find a person guilty of these crimes, that person must not only intentionally commit the prohibited act, but must do so with a specific intent or mental state. The act and the specific intent or mental state required are explained in the instruction for that crime." (*Serrano, supra*, 77 Cal.App.5th at p. 910.)

Regarding the basic crime defined by subdivision (b)(1) of section 136.1, the trial court instructed the jury with CALCRIM No. 2622 as follows: "The defendant is charged in Count 19 with intimidating a witness in violation of Penal Code section 136.1. [¶] To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant tried to prevent Jane Doe 2 from making a report that someone else was a victim of a crime to the police; [¶] 2. Jane Doe 2 was a witness; [¶] AND [¶] 3. The defendant knew he was trying to prevent Jane Doe 2 from reporting a crime and intended to do so." The element and definition of "malice" were not included in this instruction, which was appropriate because malice is not an element of the basic crime described in subdivision (b)(1). (*Serrano, supra*, 77 Cal.App.5th at p. 910.)

14

Malice is an element of the aggravated form of the crime stated in section 136.1, subdivision (c)(1). The trial court instructed the jury with a modified version of CALCRIM No. 2623 as follows: "If you find the defendant guilty of intimidating a witness, you must then decide whether the People have proved the additional allegation that the defendant used or threatened to use force. [¶] To prove this allegation, the People must prove that: [¶] The defendant used force or threatened, either directly or indirectly, to use force or violence on the person or property of a witness. [¶] The People have the burden of proving this allegation beyond a reasonable doubt. If the People have not met this burden, you must find that this allegation has not been proved." The modified instruction omitted the requirement that "[t]he defendant acted maliciously" and that "[a] person acts maliciously when he or she unlawfully intends to annoy, harm, or injure someone else in any way, or intends to interfere in any way with the orderly administration of justice." (CALCRIM No. 2633, italics omitted;[5] §§ 136, 136.1.)

In *Serrano*, the same instructions were given (*Serrano, supra*, 77 Cal.App.5th at pp. 910–911), and the court held that the instructions satisfied the knowledge element of section 136.1, subdivision (c)(1) but it was error to omit both the malice element and the definition of malice. (*Id.* at pp. 912–913.)

The People concede that the trial court erred in failing to instruct the jury on the malice element and the definition of malice. However, they argue

---

[5] CALCRIM No. 2623 includes the malice element and definition in brackets, and the bench notes state: "If the court has given the malice element in CALCRIM No. 2622, the court may delete it here. If the court has not already given this element and the defendant is charged under subdivision (c), the court must give the bracketed element requiring malice here . . . ."

15

the error was harmless beyond a reasonable doubt.  (See *Serrano, supra,* 77 Cal.App.5th at pp. 913–914 [applying *Chapman* standard for harmless error to fail to instruct on malice element].)  We agree the error was harmless beyond a reasonable doubt.

Under the *Chapman* standard, an error is harmless if it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.  (*Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705].)  In considering prejudice in the context of instructional error based on the omission of an element of a charged offense, " 'we must review the record to determine whether it contains evidence that could rationally lead to a contrary finding with respect to the omitted element.' " (*Serrano, supra*, 77 Cal.App.5th at p. 914.)  Defendant argues the error was prejudicial because "the instant case relied on speculation as to whether or not appellant knew Doe 2 was on the phone to 9-1-1 and maliciously interfered with such call," and that properly instructed jurors "may well have concluded that the likelihood that conflict over Doe 2's cell phone use was simply part of the ongoing dispute between Doe 2 and appellant was sufficient to create a doubt as to malicious intent."  Defendant's argument ignores the fact that although the trial court gave an erroneous instruction for the aggravated form of the crime (§ 136.1, subd. (c)(1)), it gave a correct instruction for the basic form of the crime (*id.,* subd. (b)), which required the jury to find that defendant intended to prevent Doe 2 from reporting a crime. Thus, the jury rejected the defendant's version of events and instead found that he knew he was trying to prevent Doe 2 from reporting a crime and that he intended to do so.  (CALCRIM No. 2622.)

The proper focus of the prejudice analysis is the omitted element that defendant acted "maliciously" as defined by statute.  (§ 136.1, subd. (c)(1);

16

CALCRIM No. 2623.) "A person acts maliciously when he or she unlawfully intends to annoy, harm, or injure someone else in any way, or intends to interfere in any way with the orderly administration of justice." (CALCRIM No. 2623, italics omitted.) We find a review of the entire record reveals no evidence that could rationally support a finding that defendant's conduct was not intended to annoy, harm, or injure Doe 2, when, in the midst of violently assaulting her mother, defendant grabbed Doe 2's phone out of her hand and threw it across the room while yelling and cursing at her.

## III.    *Exclusion of Evidence of Prior Allegations of Sexual Assault*

Defendant contends the trial court improperly excluded evidence of prior sexual assault allegations made by Doe 2 and Doe 1.

### A.    **Doe 2's 2015 Allegations of Sexual Misconduct by Juvenile Boys**

Defendant contends that the trial court's exclusion of evidence that Doe 2 made allegations of sexual assault against juvenile boys in 2015 deprived him of his right to present evidence and to a fair trial. He contends the evidentiary ruling precluded him from explaining how the 2015 sexual assault allegations impacted his parenting of Doe 2. Specifically, defendant argues that his knowledge of Doe's 2015 allegations was relevant to explain his actions of talking with Doe 2 privately in the back room and of grabbing and throwing Doe 2's phone during the August 19, 2020 incident.

According to defendant, his testimony was improperly limited. He complains that he was not permitted to explain that the reason he took Doe 2 into a private room to talk to her during a birthday party was "based upon an honest and reasonable belief that Doe 2 was inviting harm by continuing to have contact with the boys that had got her into trouble." Instead, he was only permitted to testify that his discussion with Doe 2 in the back room involved boys. He further complains that in his later testimony he responded

17

to a question about the source of his conflicts with Doe 2 by stating, " '[It] had to do with one of her friends put her in situations that I didn't agree with. That was dangerous situations.' " Although there was no objection imposed to this testimony, defendant contends on appeal that his offered justification of " 'dangerous situations' " sounds "pretty lame standing on its own unsupported by the facts upon which [his] parental concern was based," and he implies that evidence of the 2015 incident would have bolstered his defense by explaining his motivations for seizing Doe 2's phone and why he sequestered her in the back room during her birthday party.

As we explain, the trial court did not abuse its discretion in precluding testimony regarding Doe 2's 2015 accusation of sexual abuse by juvenile boys.

### 1.    Additional Background

Defendant filed a motion in limine seeking to introduce evidence of prior sexual allegations and conduct of the alleged victims. As to Doe 2, defendant sought to introduce evidence that in 2015, Doe 2 reported to him that while she was at a sleepover at a neighbor's home, she was sexually abused by two boys. Police interviews were conducted, the allegations were not substantiated, and no proceeding was filed. During a police interview, Doe 2 stated she forgot what she was supposed to say. Defendant argued the evidence was admissible to prove prior sexual knowledge independent of the crime charged against defendant, a prior false complaint of molestation, and Doe 2's reputation as to untruthfulness. The trial court denied the motion, finding that evidence of the 2015 incident would involve an undue consumption of time necessitating "a trial within a trial" and that it was more prejudicial than probative. The trial court also stated that defendant had not established that Doe 2 lied about the 2015 incident. It excluded any mention of the 2015 incident.

18

Defendant's motion also stated that at the time of Doe 2's accusations against defendant, she was "involved with a boy" and angry at defendant for forbidding her to contact that boy. The trial court's ruling allowed admission of evidence that Doe 2 was mad at defendant for interfering with her boyfriend but precluded any mention of any sexual activity between Doe 2 and her boyfriend.

2.     Legal Principles

In a prosecution for a sex offense, evidence of the sexual conduct of a complaining witness is admissible only in limited circumstances and subject to the procedures under Evidence Code section 782. (Evid. Code, § 1103; *People v. Fontana* (2010) 49 Cal.4th 351, 362.) Evidence of a prior false report of sexual assault is relevant to the credibility of the victim; however, such prior accusations do not reflect on credibility unless they are proven to be false. (*Miranda, supra*, 199 Cal.App.4th at p. 1424.) Further, under Evidence Code section 352,[6] the trial court has discretion "to exclude evidence of prior reports of sexual assault if proof of the falsity of the prior complaint 'would consume considerable time, and divert the attention of the jury from the case at hand.' " (*Miranda*, at p. 1424, citing *People v. Bittaker* (1989) 48 Cal.3d 1046, 1097, disapproved on other grounds by *People v. Black* (2014) 58 Cal.4th 912, 919.)

" '[A] trial court's exercise of discretion under Evidence Code section 352 will not be reversed on appeal absent a clear showing of abuse.' " (*People v. Tidwell* (2008) 163 Cal.App.4th 1447, 1457 (*Tidwell*).) Although

---

[6] Evidence Code section 352 states: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, confusing the issues, or of misleading the jury."

" ' " 'Evidence Code section 352 must bow to the due process right of a defendant to a fair trial and his right to present all relevant evidence of significant probative value to his defense,' " ' " " '[t]his does not mean that an unlimited inquiry may be made into collateral matters; the proffered evidence must have more than "slight-relevancy" to the issues presented. . . . The proffered evidence must be of some competent, substantial and significant value.' " (*Tidwell, supra*, 163 Cal.App.4th at p. 1457.) We will not reverse a trial court's exercise of discretion under Evidence Code section 352 absent a showing the trial court acted in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice. (*Tidwell*, at p. 1457.)

### 3.    Analysis

The People argue that, for the first time on appeal, defendant presents an alternative theory of relevance of Doe 2's 2015 accusations against the juvenile boys and thus he has forfeited the issue. On appeal, defendant asserts the trial court's ruling prevented him from explaining his motive for seizing Doe 2's phone and for talking to her privately in the back room during her birthday party. In the trial court, defendant's motion argued the evidence of Doe 2's prior sexual assault allegations was admissible to impeach Doe 2's testimony, prove preexisting knowledge of sexual acts, or otherwise damage her credibility.

Defendant's reply brief acknowledges the People's forfeiture argument and offers two responses. First, he contends that under *Crane v. Kentucky* (1986) 476 U.S. 683 [90 L.Ed.2d 636] and *In re Martin* (1987) 44 Cal.3d 1, the restriction of his state of mind evidence violated due process. This argument is not a direct response to the People's forfeiture argument. Neither *Crane* nor *In re Martin* stands for the position that a defendant may seek review of

a ruling to exclude evidence by belatedly claiming, for the first time on appeal, that the evidence was relevant to his state of mind. (See *Crane, supra*, 476 U.S. at pp. 690–691 [state courts erred in rejecting defendant's argument that evidence about the circumstances of his confession was relevant to its reliability and credibility despite pretrial determination that confession was voluntary]; *In re Martin, supra*, 44 Cal.3d at pp. 24, 27, 51 [holding prosecutorial misconduct in the form of intimidation of defense witnesses violated defendant's constitutional right to present testimony of witnesses at trial].)

Defendant further responds that his offer of proof in the trial court was sufficient to preserve his right to review. He states, without any record citations,[7] that "appellant was trying to explain the reason for his actions that would otherwise appear suspicious. Appellant was trying to explain that he went to grab the phone out of Doe 2's hand because her prior use of that phone had got her into trouble: whether acting as a concerned parent or simply angry at Doe 2 for her misuse of the phone he had given her, his intent was not to interfere with a call to police. And he was trying to explain why he would want to sequester Doe 2 on her birthday: he did so because the matters of concern were confidential, not because he wanted an opportunity for molestation." Defendant has not provided any record citations indicating that these asserted grounds of admissibility were presented to the trial court. Instead, as noted *ante*, his motion in limine argued the 2015 incident was relevant to impeach Doe 2's testimony, prove preexisting knowledge of sexual acts, or otherwise damage her credibility. Defendant's claim that the 2015 incident was admissible to prove his own motive and the basis for his actions is not cognizable on appeal because this theory was not articulated to the

---

[7] Cal. Rules of Court, rule 8.204(a)(1)(C).

21

trial court.  (Evid. Code, § 354 [precludes reversal based on evidentiary issue unless "[t]he substance, purpose, and relevance of the excluded evidence was made known to the court"]; *People v. Smith* (2003) 30 Cal.4th 581, 629–630.)

Defendant fails to establish the trial court abused its discretion when it denied his motion to admit evidence of the 2015 incident.  The proffered evidence could only be relevant if Doe 2's prior accusations were proven to be false.  (*Miranda, supra*, 199 Cal.App.4th at p. 1424.)  The 2015 accusation, made seven years prior to the charges against defendant and eight years before trial, was investigated, but no case was filed against the alleged perpetrators.  As the trial court found, there was no proof that the 2015 accusation was false.  The trial court was well within its discretion to exclude evidence of the 2015 incident on the basis that its probative value was limited and outweighed by the undue consumption of time required to prove the falsity of a stale accusation made against nonparties.  (See *People v. Bittaker, supra*, 48 Cal.3d at p. 1097 [upholding trial court's exclusion under Evid. Code, § 352 of evidence that victim made false charges of molestation against others, when admitting the evidence "would in effect force the parties to present evidence concerning two long-past sexual incidents which never reached the point of formal charges"]; *Miranda, supra*, 199 Cal.App.4th at pp. 1425–1426 [same]; *Tidwell, supra*, 163 Cal.App.4th at pp. 1456–1458 [same].)

Given that the trial court's ruling was not an abuse of discretion, defendant's constitutional claims also fail.  (*People v. Panah* (2005) 35 Cal.4th 395, 484, fn. 32.)

### B.    Doe 1's Prior Rape Accusation

Defendant's motion in limine also sought to introduce evidence that in 2009 Doe 1 falsely accused a juvenile boy of rape and that at the contested juvenile hearing the juvenile court judge found Doe 1's testimony as to the

22

rape count not credible and found the rape count not true. He also sought to introduce evidence that at the time of the alleged molestation by defendant, Doe 1 was in a sexual relationship with a boyfriend; defendant interfered with the relationship by taking away her cellphone; and thus Doe 1 had a motive to fabricate allegations against defendant. The trial court's oral ruling summarized the facts stated in the juvenile court judge's decision and the juvenile court judge's finding that Doe 1 "lied about many things on the stand." It found the juvenile court's ruling regarding Doe 1's credibility to be relevant and noted that the defense was willing to agree to an evidentiary stipulation regarding the juvenile court's credibility finding. The trial court concluded that evidence of Doe 1's sexual relations with her boyfriend was more prejudicial than probative and would not be admitted. However, defendant was permitted to present evidence that Doe 1 had a boyfriend and defendant interfered with her relationship with her boyfriend by taking her phone away.

The stipulation read to the jury stated: "On March 23rd, 2010, there was a juvenile court hearing in Contra Costa County. The hearing was a juvenile contest regarding three charges involving (Jane Doe 1) as the alleged victim, and another male juvenile as the accused. [¶] After evidence was presented and counsel concluded their final remarks, the judge made certain findings. [¶] As to the third charge, the judge found that the evidence did show beyond a reasonable doubt that the charge had been proven. [¶] As to Counts 1 and 2, the judge found that those charges were not proven beyond a reasonable doubt. [¶] The Court found (Jane Doe 1)'s testimony had so many inconsistences that it was very difficult to ascertain the truth. The judge found that (Jane Doe 1)'s testimony regarding those charges was not credible,

23

and therefore the evidence was insufficient to be proven beyond a reasonable doubt."

Defendant contends that the trial court erred in limiting evidence of Doe 1's prior false allegation to the stipulation and argues that he should have been permitted to question Doe 1 about her prior false statements. He also argues it was error to exclude evidence of Doe 1's sexual relationship with her boyfriend, which he claims was relevant to his motivation to take her phone.

We find no error. The stipulation summarized the key findings of the juvenile court judge as to Doe 1's credibility in the prior proceeding. Defendant does not contend the stipulation was inaccurate. Instead, he complains he was not permitted to cross-examine Doe 1 about her alleged false statements referenced in the prior juvenile proceeding. Defendant has not established that the trial court abused its discretion by limiting the evidence of Doe 1's prior false accusation to the stipulation. (Evid. Code, § 352.) The relevance of the prior juvenile proceeding was that Doe was found to have made inconsistent statements and her prior testimony was not credible. The stipulation accurately reflected these findings, and it avoided the risk of the trial's devolving into a rehash of the prior juvenile proceeding. (*Tidwell, supra*, 163 Cal.App.4th at p. 1458.)

Nor does defendant demonstrate that the trial court abused its discretion by excluding evidence that Doe 1 was having sex with her boyfriend at the time she claimed defendant raped her. As the trial court aptly found: "You don't have to inform the jury that the victim was having sex with her boyfriend to admit evidence that she was mad because the phone was taken away . . . . [¶] You can have evidence that she had a boyfriend and that he deprived her of contacting that boyfriend because he took the phone

24

away, and that interfered with the relationship . . . ." Defendant testified that he had disputes with Doe 1 regarding her use of the cellphone and that she used the phone "to contact a boyfriend that she wasn't supposed to be contacting." Whether or not Doe 1 was having sex with her boyfriend was not relevant to understanding Doe 1's alleged anger toward defendant over their cellphone disputes and her possible motivation to lie. (See *People v. Bautista* (2008) 163 Cal.App.4th 762, 783 [no abuse of discretion in excluding evidence of victim's sexual conduct when defendant was permitted to elicit testimony regarding victim's alleged bias against defendant because he interfered with her relationships with others].) Having concluded the trial court did not err in excluding evidence of Doe 1's sexual conduct under Evidence Code section 782, we reject defendant's argument that the exclusion violated his federal constitutional rights to present a defense and to confrontation. " ' "[A]pplication of the ordinary rules of evidence generally does not impermissibly infringe on a . . . defendant's constitutional rights." ' " (*People v. Eubanks* (2011) 53 Cal.4th 110, 143.)

## IV.  *One Strike Sentencing*

Defendant argues that his 25-year-to-life sentences on counts 6–11 and 13–16 must be vacated because the information did not plead section 667.61, subdivision (j)(2) and, instead, only provided notice of 15-year-to-life, one strike sentences based on a single circumstance in subdivision (e) of section 667.61. The People acknowledge that the information erroneously referenced subdivisions (a) and (e) of section 667.61 rather than subdivision (j)(2). They characterize this as a "minor misidentification" and assert that it does not constitute a due process notice violation. We agree the defendant did not receive due process notice that the People intended to seek 25-year-to-life sentences under section 667.61, subdivision (j)(2) based on the victims' being

25

under the age of 14 and the circumstance that there were multiple victims. (*In re Vaquera* (2024) 15 Cal.5th 706, 721, 723–725 [25-year-to-life sentence imposed for § 288, subd. (a) conviction violated due process because one strike allegation in information cited only to the multiple victim circumstance and did not cite to § 667.61, subd. (j)(2) or make clear prosecution sought longer sentence based on the victim's age] (*Vaquera*).)

### A.  One Strike Law

The "One Strike" law under section 667.61 provides an alternative, harsher sentencing scheme for certain sex crimes committed under specific aggravating circumstances.  (*Vaquera, supra*, 15 Cal.5th at p. 713.)  "The law applies when the prosecution pleads and proves specific factual circumstances in addition to the elements of the underlying sex offense." (*Ibid.*)  If a jury finds a one strike allegation true, the offense generally is punished by an indeterminate sentence of either 15 or 25 years to life.  (*Ibid.*; § 667.61, subds. (a)–(e).)

Section 667.61, subdivision (a), subject to certain exceptions, provides in part that a person convicted of a qualifying offense (listed in subd. (c), and including § 288, subd. (b)), under two or more circumstances specified in subdivision (e), shall be sentenced to 25 years to life.[8]  In contrast, section 667.61, subdivision (b) provides for 15 years to life for the same qualifying offenses committed under one of the circumstances specified in subdivision (e).  (§ 667.61, subd. (b).)  As relevant here, subdivision (e)(4) identifies the circumstance that "[t]he defendant has been convicted in the

---

[8] Subdivision (a) also applies to certain convictions committed under one or more circumstances listed in subdivision (d), which includes prior convictions for sex offenses, kidnapping, and burglary.  (§ 667.61, subd. (d).) The subdivision (d) circumstances are not at issue in this matter.

present case . . . of committing an offense specified in subdivision (c) against more than one victim."

"This general scheme is subject to exceptions added by the Chelsea King Child Predator Prevention Act of 2010 (Stats. 2010, ch. 219, § 16) (Chelsea's Law), codified in subdivisions (j), (*l*), and (m).  [Citation.]  Those subdivisions prescribe increased punishments of 25 years to life or life without the possibility of parole when the prosecution has pled and proved a One Strike circumstance involving a minor victim.  (See § 667.61, subds. (j), (*l*), (m).)  Among these circumstances is subdivision (j)(2) . . . , which provides for a sentence of 25 years to life for '[a] person who is convicted of an offense specified in subdivision (c) under one of the circumstances specified in subdivision (e), upon a victim who is a child under 14 years of age.' " (*Vaquera, supra*, 15 Cal.5th at pp. 713–714.)

It is undisputed that defendant was convicted of 10 counts of lewd or lascivious act upon a child under 14 years of age (§ 288, subd. (b)(1); counts 6–11, 13–16).  Counts 6–11 involved Doe 1, and counts 13–16 involved Doe 2.  Section 288, subdivision (b) is one of the offenses listed in section 667.61, subdivision (c), which means that if the prosecution pleads and proves certain circumstances of the crime, it is subject to one strike sentencing.  (§ 667.61.)

**B.     Additional Background**

The information alleged, as to counts 6–11 and 13–16, the following one strike allegation:  "PC667.61(a)/(E):  Special Allegation-Sex Crimes–Aggravating Circumstances [¶] It is further alleged, within the meaning of Penal Code sections 667.61(a) and (e), as to defendant JOSEPH STALLWORTH, as to Count listed above that the following circumstances apply:  the defendant committed the acts alleged against more than one victim."  (*Sic.*)  A two-page summary sheet was attached to the information,

27

which for counts 6–11 and 13–16 listed the special allegation of section 667.61, subdivisions (a) and (e), and the effect being a sentence of 25 years to life for those counts.[9]

Defendant was convicted on counts 6–11 and counts 13–16,[10] and the jury found true the multiple victim allegation.

The People's sentencing memorandum sought consecutive 25-year-to-life sentences on counts 6–11 and 13–16, specifically quoting the language of section 667.61, subdivision (j)(2). Defendant's sentencing brief argued that the information did not contain sufficient notice of the applicability of section 667.61, subdivision (j)(2) based on the true finding for multiple victims and the age of the victims, and that imposing sentence under subdivision (j)(2) would violate defendant's due process rights.

The court sentenced defendant to consecutive 25-year-to-life sentences on counts 6–11 and 13–16.

### C. Analysis

We agree with defendant that the information, which referenced only subdivisions (a) and (e) of section 667.61 and identified only one circumstance (multiple victims), did not provide defendant with fair notice that the

---

[9] The previously filed felony complaint contained the following enhancement language for the same counts: "PC667.61(j)(2): Special Allegation-Sex Crimes Aggravating Circumstances [¶] It is further alleged as to Count listed above within the meaning of Penal Code sections 667.61(j)(2) and (e), that the victim in the above offense was a child under 14 years of age and that the following circumstance applies: the defendant committed the acts alleged against more than one victim." (*Sic.*) The complaint included a summary sheet which for counts 6–11 and 13–16 listed the special allegation of section 667.61, subdivision (j)(2) and the effect being a sentence of 25 years to life for those counts.

[10] Defendant was also convicted on additional counts which are not relevant to sentencing issue raised on appeal.

28

prosecution was exercising its discretion to seek 25-year-to-life sentences under subdivision (j)(2) based on the multiple victim circumstance and the age of the victims.  (§ 667.61.)  "[A] defendant has a cognizable due process right to fair notice of the specific sentence enhancement allegations that will be invoked to increase punishment for [the defendant's] crimes."  (*People v. Mancebo* (2002) 27 Cal.4th 735, 747.)

In *Vaquera*, our Supreme Court invalidated a 25-year-to-life sentence imposed on a defendant convicted on two counts of lewd act on a child under 14 years of age (§ 288, subd. (a)) when the information contained a one strike allegation referring to section 667.61, subdivisions (b) and (e), and alleging the multiple victim circumstance.  (*Vaquera, supra*, 15 Cal.5th at pp. 712, 714, 728.)  *Vaquera* found that the information failed to provide the defendant fair notice of the prosecution's intent to seek the more stringent 25-year-to-life sentence and the factual basis on which it sought that sentence.  (*Id.* at pp. 723–725.)  The one strike allegation's reference to a count alleging a lewd act on a child under 14 years of age was insufficient to provide fair notice of the prosecution's election to rely on the allegation of the victim's age to seek a longer, one strike sentence.  (*Id.* at pp. 724–725.)

*Vaquera* states that "due process does not require 'rigid code pleading or the incantation of magic words.' "  (*Vaquera, supra*, 15 Cal.5th at p. 719.)  "To satisfy due process, it is sufficient for an accusatory pleading to provide the defendant fair notice of a particular one strike sentence the prosecution is seeking and of which facts it intends to prove to support that sentence."  (*Id.* at p. 720.)  *Vaquera* offers the following examples that would provide fair notice of the prosecution's intent to seek a 25-year-to-life sentence under section 667.61, subdivision (j)(2):  "The prosecution could have briefly alleged in the One Strike allegation the factual circumstances on which it was

29

relying (Vaquera having been convicted in the present case of committing violations of section 288, subdivision (a) against multiple victims and the victim being under the age of 14) and cited to the One Strike law generally (§ 667.61). [Citation.] Alternatively, the prosecution could have cited to subdivision (j)(2) and referenced the charge in count 2 (§ 288, subd. (a)), an essential element of which is that the victim was under 14 years old) and the multiple victim circumstance (§ 667.61, subd. (e)(4)). Had the prosecution framed the allegation in either of these ways, due process would not have required it to expressly specify that it was seeking 25 years to life on count 2, although doing so would have rendered the pleading even clearer as to Vaquera's sentencing exposure. Alternatively, had the prosecution specified in the One Strike allegation that it was seeking 25 years to life on count 2 and alleged the factual circumstances on which it was relying to support that sentence, that would have provided fair notice even without a citation to subdivision (j)(2)." (*Id.* at p. 725, fns. omitted.)

The information at issue in *Vaquera* referred to section 667.61, subdivisions (b) and (e)(4), and stated defendant committed the offense against more than one victim. (*Vaquera, supra*, 15 Cal.5th at p. 720.) Subdivision (b) provides for a 15-year-to-life sentence for specified convictions committed under one of the circumstances specified in subdivision (e). (§ 667.61, subd. (b).) Subdivision (e)(4) is the multiple victim circumstance. Here, the information did not allege subdivision (b) and, instead, alleged subdivisions (a) and (e). As in *Vaquera*, the allegation referred only to the circumstance that "defendant committed the acts alleged against more than one victim."

The ambiguity of the one strike allegation is that section 667.61, subdivision (a) provides for a 25-year-to-life sentence if the offense is

committed under *two or more* circumstances in subdivision (e), and the information alleged only one circumstance, i.e., multiple victims. (§ 667.61, subds. (a), (e)(4).) The People acknowledge the reference to subdivision (a) was a mistake, but they argue that it nonetheless provided notice of the prosecution's intent to seek a 25-year-to-life sentence. We reject the People's argument. While the information notifies defendant of the 25-year-to-life term that applies under subdivision (a), that subdivision is not triggered based on the single subdivision (e) circumstance alleged. Thus, the information is, at best, ambiguous and confusing as to whether the prosecution intended to seek terms of 25 years to life and, if so, based on which alleged circumstances, rather than 15 years to life based on the multiple victim circumstance.

As in *Vaquera*, the one strike allegation in the information did not provide fair notice that the prosecution sought a sentence of 25 years to life under subdivision (j)(2) based on the age of the victims. The allegation does not reference subdivision (j)(2), specify that the victims were under 14 years old, or "otherwise make clear that the prosecution was seeking a longer sentence based on the victim's age." (*Vaquera, supra*, 15 Cal.5th at p. 725.)

The People further argue fair notice was provided because the complaint correctly referenced subsection (j)(2) and both the complaint and the information contained summary sheets listing the sentences for each of the counts at issue as 25 years to life. We reject this argument as well. The one strike allegation in the complaint refers to subdivision (j)(2) and subdivision (e), and states that the victim was under the age of 14 and that the multiple victim circumstance applies. The summary sheet attached to the complaint lists 25-year-to-life sentences for the counts at issue and also, again, lists subdivision (j)(2). In contrast, the information removes both the

31

reference to subdivision (j)(2) and the specific reference to the age of the victims and, instead, refers to subdivisions (a) and (e). The summary sheet attached to the information lists 25-year-to-life sentences for the counts at issue but does so with reference to subdivisions (a) and (e). As discussed *ante*, the subdivision (a) 25-year-to-life sentence is not triggered by only the single multiple victim subdivision (e) circumstance alleged in the information. (§ 667.61, subds. (a), (e).) Further the information's deletion of *both* the reference to subdivision (j)(2) *and* the victim's ages suggests a change in prosecutorial intent. We find the information here suffers from the same flaws as explained in *Vaquera*: "[T]he information is most reasonably interpreted as conveying a prosecutorial election not to rely on the age of the victim—and thus not to invoke subdivision (j)(2) . . . . The One Strike allegation's ambiguous reference [to subdivision (a)] did not provide fair notice of the prosecution's election to rely on the allegation of the victim's age to seek a longer One Strike sentence." (*Vaquera, supra*, 15 Cal.5th at pp. 724–725.)

The People also argue that any error is harmless, claiming that even though the information incorrectly alleged subdivision (a), that subdivision also called for a 25-year-to-life sentence. They further assert that the defense filed motions indicating that the multiple victim circumstance "turn[ed] this into a potential life case." (Italics omitted.) *Vaquera* declined to decide whether a due process pleading defect was subject to a prejudicial error analysis, but assuming it was, our Supreme Court found that the People failed to demonstrate the failure to provide fair notice was harmless. (*Vaquera, supra*, 15 Cal.5th at p. 726.) It observed that nothing in the record suggested the defendant learned of his sentencing exposure in time to consider it in his defense strategy. (*Ibid*.) We are unpersuaded by the

People's harmless error argument. As noted, the information suggests an intent to rely only on the single subdivision (e) circumstance alleged, which provides for a 15-year-to-life sentence. (§ 667.61, subds. (b), (e).) The fact that defense counsel's pretrial motion refers to the multiple victim allegation, making this a "potential life case," does not indicate that the defendant was on notice prior to sentencing that the prosecution would seek a sentence of 25 years to life, as opposed to 15 years to life.

We conclude defendant's due process right to fair notice was prejudicially violated. He did not have timely notice the prosecution was seeking the greater 25-year-to-life sentence on the counts at issue under section 667.61, subdivision (j)(2) based on the victims' ages and the multiple victim circumstance, rather than the 15-year-to-life sentence based on only the multiple victim circumstance. (§ 667.61.)

## DISPOSITION

We remand with instructions to strike the 25-year-to-life sentences imposed on counts 6–11 and 13–16, and to resentence defendant on those counts to 15 years to life. The trial court is also instructed to correct the amended abstract of judgment to reflect that the one-year, concurrent sentence on count 18 is stayed pursuant to section 654. The judgment is otherwise affirmed.

Jackson, P. J.

WE CONCUR:

Simons, J.
Burns, J.

A169090/*People v. Joseph Stallworth*

33